## Lucy McAnich *et al.* v. Julia Hulse, Appellant.

**Surveys: PRESUMPTIONS:** *Evidence.* Under Code, section 538, providing that a copy of the county surveyor's field notes, plat and record, duly certified, shall be presumptive evidence of the survey between the persons who joined in requesting it, in an action to quiet title, all evidence by the county surveyor as to the location of a boundary line, which has not been made with the knowledge of one of the parties, cannot be given presumptive weight as to the correctness of the survey.

OVERCOMING PRESUMPTION OF CORRECTNESS. In a suit to quiet title to realty, the plaintiff's claim rested on a survey by the county surveyor, who located a section line in dispute east of where it was originally established in 1853. The line as originally established was marked by a highway, fenced and maintained in accordance with such location. Such county surveyor, in locating the boundary, accepted the starting point fixed by another surveyor, which was outside the highway. All of the dividing lines in the part of the section in dispute were established by reference to the quarter post as fixed by the original survey, and when the land claimed by plaintiffs was deeded to the grantee, under whom they claimed, it was understood that it would be measured from the line as established by the original survey. *Held,* sufficient to overcome presumptive correctness of such county survey, if it were entitled to the presumptive weight given by Code, section 538, to the record of a survey made by a county surveyor.

*Appeal from Poweshiek District Court.*—Hon. D. Ryan, Judge.

MONDAY, JANUARY 21, 1901.

ACTION to quiet title to land. Plaintiffs are the widow (now remarried) and the children of one Lewis Hulse, now deceased, who was the son of defendant, and claim title to the premises in controversy under a conveyance made to said Lewis Hulse by defendant in exchange for the conveyance of another tract of land made to defendant by said Lewis Hulse. Defendant takes issue as to material averments of plaintiffs' petition; also pleads an estoppel; and by way of cross petition asks that her title to the land in controversy be quieted against plaintiffs, or, if this cannot be done under the evidence, then that the exchange of lands by which Lewis Hulse acquired title to the premises be canceled, and for other and further relief.—*Reversed.*

*O. M. Slaymaker* and *Haines & Lyman* for appellant.

*W. R. Leiwis* for appellees.

McCLAIN, J.—The facts necessary for the decision of this appeal are briefly as follows: One James Hulse, in 1889, died seised of the east $\frac{1}{2}$ of the west $\frac{1}{2}$ of the southwest $\frac{1}{4}$, and the east $\frac{1}{2}$ of the southwest $\frac{1}{4}$, of section 8, in township 18, range 13, Poweshiek county, which premises he had owned and occupied for about 25 years. By partition proceedings, the east 47 acres of this tract were assigned to his son Lewis, and the balance to his widow, who is the defendant in this action. In 1890 defendant deeded to Lewis the west 40 of the tract (that is the east $\frac{1}{2}$ of the west $\frac{1}{2}$ of the southwest $\frac{1}{4}$) in exchange for the east $\frac{1}{2}$ of the east $\frac{1}{2}$ of the southwest $\frac{1}{4}$, which belonged to him. In 1891, Lewis Hulse died, and the plaintiffs in this action own through him the 40-acre tract conveyed to him by defendant. At the time of the exchange there were improvements, consisting of a larger and smaller dwelling house, with barn, cribs, and other buildings, on the tract, which had belonged to defendant; and near the boundary line between the tract retained by

her and the 40-acre tract deeded to Lewis. Between the time
of the exchange and the death of Lewis defendant lived in
the larger of these houses, and Lewis, with his family, in
the smaller one, further east. Plaintiffs now claim that
the eastern boundary of their 40-acre tract is east of the
larger house, and that this house and some of the other im-
provements belong to them, while defendant claims that the
line is 21 feet west of the house, and that none of the im-
provements are upon plaintiffs' land. The fact that the por-
tion of the premises in controversy, which is a wedge-shaped
piece some 60 or 80 feet wide at the north end, and running
to a point at the south end, includes these buildings is what
gives significance to the controversy.

The first question is whether the boundary line between
the property of plaintiffs and that of defendant runs east
of the dwelling house, instead of substantially where the
fence stands, in reference to which the premises have
up to this time been occupied. This line is one sub-
stantially followed by a fence constructed soon after
the death of Lewis Hulse by the son of defendant, for de-
fendant and the plaintiff Lucy McAnich, and recognized
by the parties as the boundary line for several years after
Lewis Hulse's death, and until after a certain survey was
made in 1894 by one Buck, county surveyor, which will be
hereafter more fully referred to. Plaintiffs' claim rests en-
tirely upon the survey made by said Buck, county surveyor,
who testifies that, on establishing the lines by means of meas-
urements from the government corners, he found the line be-
tween the east $\frac{1}{2}$ and the west $\frac{1}{2}$ of the southwest $\frac{1}{4}$ of the sec-
tion would run some 25 feet east of the larger dwelling
house. Plaintiffs contend that this line established by the
county surveyor is presumptively correct. Code, sections
534, 538. The latter of these sections, which is the one most
explicit as to the effect to be given to the survey, provides
that it is the copy of the field notes, plat, and record duly
certified which is to be presumptive evidence, and that it

is to be such evidence "between those persons who join in requesting it and any other person then concerned who has reasonable notice that such survey is to be made and the time thereof." One serious difficulty with·the Buck survey is that it does not appear ever to have been made of record at all. At any rate, no record of it was introduced in this case. It is set forth wholly by the oral evidence of Buck himself. No doubt his evidence is entirely competent, like that of any other witness, to prove the line in controversy, but it does not appear that any presumption is to be entertained in behalf of his oral evidence. Again, there is only the most meager evidence that defendant had any knowledge of this survey. When Buck was making it she seems to have agreed in an indefinite way that she would share in the expense of some sort of survey, but it does not at all appear that she knew who was to make it, and she afterwards paid her share of the expense, only after considerable protest. Furthermore, Buck's survey never seems to have been completed, and for that reason probably was never made a matter of record. He came back to revise it at the request of a son of defendant, who pretended to act in defendant's behalf, but who never furnished him the written request from defendant which he asked, and finally gave up the job while still attempting to verify the location of the quarter post on the west line of the section, which will be referred to later on. It does not seem, therefore, that Buck's survey was so far complete and of record that it ought to be given any presumptive weight under the statute. But, even treating it as presumptively correct, it is not to be regarded as conclusive, and its presumptive weight is certainly seriously affected by the circumstances under which it is made.

There is further evidence of the line in question which we are required to consider. The correctness of Buck's survey depends entirely upon the starting point at the quarter post on the west line of this section. This post was located about 1853 by one Talbot, and the highway was established, fenced, and has ever since been maintained,

in accordance with that location. Subsequently one Greer established the same point as about 62 feet further east, and entirely outside the limits of the highway, and it was the Greer post which Buck accepted in making his measurements. Now, as a matter of fact, all the dividing lines in the west half of the section referred to in the evidence were established by reference to the Talbot post, and the line between James Hulse and the party owning west of him was marked by a fence which had been in existence for 25 years at the time of his death. Therefore, when the 40 claimed by plaintiff was deeded to Louis Hulse, it was understood by all parties that it would be measured from the west line thus established, and as thus measured the east line of the 40 came some 21 feet west of defendant's principal dwelling house. Now, the line of the public highway, as laid out along what was supposed to be the west line of this section, was a fact entitled to be shown in evidence by reputation and usage, as proving the boundaries of the section. This question is not discussed by counsel on either side, but must be considered by us in determining the true boundary line of this section. Many American cases allow reputation to be proven, even with reference to private boundaries, going further in this respect than the English cases; but all agree that when a private boundary line is conceded to coincide with the line recognized by the public, as for instance in the case of a highway, reputation is admissible. A few cases only need be cited. See *Clement v. Packer,* 125 U. S. 309, 321 (8 Sup. Ct. Rep. 907, 31 L. Ed. 721); *Nys v. Biemeret,* 44 Wis. 104; *Mullaney v. Duffy,* 145 Ill. 559 (33 N. E. Rep. 750); *Ralston v. Miller,* 3 Rand. (Va.) 44; *Tate v. Southard,* 8 N. C. 45; 2 Jones, Evidence, section 308. James Hulse and his neighbor to the west had their line established for them by the same Talbot who fixed the line for the highway, and the parties to the north, who built a fence supposed to be on the dividing line between the east and west halves of the Northwest ¼ of the same section,

o

established it at a point coinciding with the northern end of the original fence constructed by defendant and Lucy McAnich. All the circumstances, therefore, contradict the survey of Buck, and it is our opinion that the evidence to be drawn from these circumstances overcomes the presumptive correctness of Buck's survey, even though it be found to be entitled to the presumptive weight given by the statute to the record of a survey made by a county surveyor. If Buck had started from the Talbot corner, he would not have found the east line of the 40 in controversy to be east of defendant's dwelling house, and we are of the opinion that plaintiffs have failed to make out, by a preponderance of evidence, their right to the strip of land claimed in this action. Therefore the plaintiff's instructions should be dismissed.—Reversed.