F. F. LEATHERS ET AL. v. J. OBERLANDER ET AL., Appellants

**Boundaries:** ESTABLISHMENT OF LOST CORNERS: EVIDENCE: TRIAL *de novo.* In a proceeding to establish a lost section corner it will be assumed that the line of the highway corresponds with the original government line, as established by the commissioners and other prior surveys in conformity therewith, in the absence of satisfactory evidence of the establishment of another line by acquiescence or adverse possession; and where there is a conflict in the evidence the Appellate Court will not retry the case, but will affirm the finding of the commissioners and the court.

**Same:** HOW ESTABLISHED. The real inquiry in a proceeding to establish a lost section corner is to ascertain the location of the original government corner; and while it is competent to show the location and recognition of a highway and line fences as indicating the original corner, still if the same cannot be definitely established, the original location as shown by surveys based on other known corners of the original government survey ought to control.

**Appeal:** ABSTRACT: NONCOMPLIANCE WITH RULES. An amended abstract consisting of pleadings, reports and other formal matters printed in full, including repetition of the title of the case in each instance, also jurats and the testimony by question and answer without abridgment, will be stricken from the files on motion for failure to comply with the rules.

*Appeal from Ringgold District Court.*— HON. H. M. TOWNER, Judge.

THURSDAY, JULY 9, 1908.

In this special proceeding for the establishment of lost corners a commissioner was appointed who established the corners in dispute, and his report was confirmed by the court after oral evidence on behalf of each party had been received. From this judgment the defendants appeal.—*Affirmed.*

*Spence & Smith,* for appellants.

*V. R. McGinnis* and *F. F. Leathers,* for appellees.

McCLAIN, J.— The controversy in this proceeding relates to the location of the quarter section corner between sections 7 and 8, in township 68, range 30 west of the Fifth principal meridian, in Ringgold county. It is alleged in the application for the establishment of lost corners that the section corner on the north line of said section is also in dispute. It appears by the report of the commissioner which is substantially uncontroverted in the evidence that no monuments of the public survey for these two corners can be found, and that the commissioner proceeded to locate the section corner by means of government corners north, south, east, and west thereof, and then establish the quarter section corner by running a straight line between the two sections from the corner thus established on the north section line to a recognized corner fixed by the government survey on the south line, placing the quarter section corner midway between these two section corners.

It is not contended by the appellants that this was not a proper method for restoring the lost quarter corner; but it is contended that the original location of the quarter section

1. BOUNDARIES: establishment of lost corners: evidence: trial *de novo.*

corner by the government survey is shown by the evidence to have been some thirty feet west of the quarter section corner as established by the commissioner. The witnesses for the defendant who attempt in their testimony to thus establish the original location of the corner as fixed by the government survey refer to a stone which was at one time in the center

of the highway established along this section line and fences which were built with reference to such government corner. After a careful reading of the evidence, we are satisfied that there is a marked conflict as to the location of the government quarter section corner. The stone to which the witnesses refer ceased to be a fixed monument at least twenty-five years before the trial of the case, for by that time it had become a floating monument, and about that time was carried away. With reference to the fences, their continuity on any definite fixed line with reference to a government monument is left in uncertainty. When the plaintiff, Leathers, built his present fence along what he claims to be the proper line on the west side of the highway in accordance with surveys which were approved by the commissioner in his report, there was no existing fence for a considerable distance either north or south of the quarter section corner, and it does not appear that there had been any fence on any division line which had by acquiescence or adverse possession become an established line for either side of such highway. In the absence of satisfactory evidence of establishment of another line by acquiescence or adverse possession, it must be assumed that the line of the highway corresponds to the location of the original government quarter section as established by the commissioner's survey and other surveys previously made with which it conforms. In view of the conflict in the evidence, we cannot question the correctness of the commissioner's finding and the judgment of the court based thereon. The case is not triable *de novo,* but the finding of the commissioner and that of the court in view of the conflict in the evidence is as conclusive as the verdict of a jury would be, and we are not justified in reaching a different result. *Newton v. Templeman,* 115 Iowa, 643; *Bohall v. Neiwalt,* 75 Iowa, 109; *Yocum v. Haskins,* 81 Iowa, 436.

The real question is as to the original location of the government quarter corner, and, while it is competent to prove the location and recognition of a highway and line

fences as indicating where the corner originally was (See *Mc-Anich v. Hulse,* 113 Iowa, 58), if the boundaries of the highway and the location of the fences claimed to have at one time corresponded to the government corner which has since been lost cannot be definitely established, the original location of the government corner as shown by surveys based on other established corners of the same survey ought to control.

2. SAME: how established.

Appellants' motion which has been submitted with the case to strike from the files appellee's so-called amended abstract is sustained, and the costs thereof are taxed to appellee. This so-called abstract consists almost entirely of the pleadings, reports of commissioners, and other formal matters printed in full with the title of the case repeated in each instance, the jurats set out in *ipsissimis verbis* and the testimony by question and answer, without so far as we can discover, any abridgement whatever. Perhaps a few matters contained in this so-called abstract might have been embodied in one or two pages of amendment to appellant's abstract, but, as the document is not prepared with any regard whatever to compliance with the rules, it should not have been filed in its present form.

3. APPEAL: abstract: non-compliance with rules.

The judgment establishing the lost corners in accordance with the report of the commissioner is *affirmed.*