J. W. WEIKAMP v. LEWIS JUNGERS, PETER REUTER, DOMINICK MOES and SIOUX CITY, IOWA, Appellants.

**Boundaries:** FINDING OF COMMISSIONERS: FORCE AND EFFECT. Commissioners appointed by the court to take testimony and report their findings with reference to disputed corners and lines are officers of the court, whose duty it is to aid in ascertaining the true boundary; and while their recommendation is entitled to consideration by the court it does not have the force and effect of the verdict of a jury, but the court may make a different finding if warranted by the evidence.

**Same:** ESTABLISHMENT OF BOUNDARY: PLEADINGS: ISSUES. The sole inquiry in an action to establish a boundary line is to ascertain the line as located by the government unless acquiescence in some other line is pleaded, and therefore the pleadings need not put in issue the location of a government quarter corner. But where acquiescence is pleaded the first inquiry is to determine whether the boundary has been fixed thereby, and if not, then to ascertain where the line was located by the original government survey.

**Same:** ACQUIESCENCE: EVIDENCE. In this action the evidence is reviewed and held insufficient to establish a boundary by acquiescence different from that located by the original government survey.

*Appeal from Sioux District Court.*—HON. JOHN F. OLIVER, Judge.

FRIDAY, FEBRUARY 17, 1911.

ACTION to establish boundary line resulted in decree as prayed, and the defendants appeal.—*Modified* and *remanded.*

*Milchrist & Scott* and *Van Oosterhout & Hospers,* for appellants.

*T. E. Diamond,* for appellee.

LADD, J.—A highway extends along the section line between sections eleven and fourteen. The plaintiff owns the S. ½ S. E. ¼ and N. W. ¼ S. E. ¼ of section eleven, and defendant Moes the S. W. ¼ of that section. The defendant Reuter owns the N. E. ¼ of section fourteen, and the defendant Jungers the N. W. ¼ thereof. The petition alleges that the quarter corner has been lost and that the entire section line is in dispute and prays that said line be established, all of which is denied in the answer and acquiescence for more than ten years alleged. Commissioners were appointed with authority to take testimony and later filed their report determining that the disputed quarter corner "is thirty-five (35) feet north of the west end of the willow trees which Nicholas Hentges set after he had purchased the land, about 1872 or 1873." This was sixty-one and four-tenths feet north of a straight line connecting the section corners and would require Reuter and Jungers to remove their fences two and one-tenth feet south and plaintiff to move his fence eight and five-tenths feet north and leave that of Moes where now located. The plaintiff excepted to the report as not supported by the evidence, and the court, so holding, entered a decree defining the true boundary line to be a straight line between the section corners. In reaching this conclusion, the court must have found (1) this to be the true line as located by the government survey, and (2) that the line as determined by the commissioners had not been acquiesced in.

I. Appellants first contend that the finding of the commissioners should have been given the same force and effect as is accorded a verdict of the jury, and, as there was substantial evidence in its support, it should not have been set aside. Such was the holding in *Yocum v. Haskins,* 81 Iowa, 436. But previously the court had de-

1. BOUNDARIES: finding of commissioners: force and effect.

cided otherwise *(Mitchell v. Wilson,* 70 Iowa, 332), and subsequently overruled *Yocum v. Haskins* and followed *Mitchell v. Wilson* in *Doolittle v. Bailey,* 85 Iowa, 398, saying "the court below had full power to make a finding different from that of the commissioner so long as it had the testimony before it. *Coombs v. Quinn,* 66 Iowa, 469. There would be no useful purpose served by a reference of the case back to the commissioner. He could do nothing more than he had already done. When the court became satisfied that the commissioner had reached the wrong conclusion from the testimony, it would be a vain and idle ceremony to require the court, before entering judgment, to again refer the case." This conclusion is in harmony with section 4235 of the Code, authorizing the court, upon exceptions to the commissioner's report being filed, to hear "evidence in addition to that reported by the commission, if necessary," and to "approve or modify such report, or again refer the matter to the same or another commission for further report." The commissioners are officers of the court appointed for the purpose of aiding in ascertaining and establishing the true boundary, and, though their recommendation is entitled to consideration, it is not to be compared with or accorded the effect of a verdict. That the finding of the trial court should be accorded such effect appears from *Walrod v. Flanigan,* 75 Iowa, 365; *Newton v. Templeton,* 115 Iowa, 643; *Vittoe v. Richardson,* 58 Iowa, 575. See *In re Harrington,* 54 Iowa, 33.

II. Appellee contends that the pleadings did not put in issue the location of the government quarter corner. It is enough to say that the sole object of the inquiry, unless acquiescence be pleaded, is to ascertain the true corner or line, and the true corner or line, is that established by the government. In this case defendants pleaded acquiescence, and it was incumbent on the district court to determine, first, whether the boundary had been fixed there-

2. SAME: establishment of boundary: pleadings: issue.

by, and, if not, then to ascertain where the line had been located in the original government survey.

III.   The section corners are not in dispute. The commissioners recommended that the quarter section be established sixty-one and four-tenths feet north of the center of a straight line connecting the two section corners, on the ground that the parties had acquiesced in lines running thereto from such corners. We are inclined to agree with the trial court that such acquiescence was not established by a preponderance of the evidence. That plaintiff had persistently insisted to the road supervisors during many years prior to the trial that the highway should be farther south and objected to grading or otherwise improving it was conclusively proven. On this account no grading other than necessary to a bridge approach was done. On one occasion, he laid the matter before the township trustees, who directed that the supervisor wait until the dispute over the line should be settled. These circumstances are entitled to consideration, not as tending to rebut acquiescence on the part of the public, for, as to the county, the doctrine has no application *(Quinn v. Baage,* 138 Iowa, 429), but as indicating the attitude of plaintiff with respect to the location of the highway and the fences inclosing it. And the evidence is convincing that defendant Reuter was fully aware at all times that plaintiff was objecting to the location of the road fences, and claiming that these were much farther north than they should be, and that plaintiff so asserted to Reuter on every appropriate occasion. The latter admitted having had a conversation with plaintiff when he constructed his fence in 1897, but testified that plaintiff approved its construction, while the latter in substance claimed to have protested and insisted that neither his own nor the fence Reuter was building was located on the true boundary of the highway. The plaintiff testified that about four years prior to the hearing he began erecting a fence

3. SAME:
   acquiescence:
   evidence.

in the roadway where he claimed the true highway boundary was when Reuter threatened to chop down the posts, and that, two years before, he had requested Reuter to set his fences over, and witness would his own, but that the former refused. This last, according to Reuter, occurred in May, 1907, and his fence was erected in May, 1897, so that, accepting his own version, the alleged acquiescence was not proven affirmatively to have continued more than ten years. One of the sons of Reuter testified that he had been aware of plaintiff's objections to the location of the road fences during the six years previous. No argument is required to demonstrate that against continued and persistent objection to a fence or other obstacle marking the true boundary acquiescence therein can not be inferred. It has not been our purpose to review the evidence in detail, but merely to direct attention to some features of the case, justifying the finding of the trial court that there was no acquiescence in fences or other monuments as marking the true boundary between the parties.

IV. Hentges saw the stake and mound of the government survey in 1870, but did not pretend to express an opinion as to its relative location. Several years later, Haag also found the stake at the quarter corner and plowed a furrow from it to the east section corner and then plowed all south of it for about three rods. This was backset in the fall, and in the spring following two rows of willows were planted from the northwest corner of Reuter's farm south along his west line some distance and four rows east along the highway about thirty-six rods. Haag testified that for a few years the north line of the breaking was observable, "showing that there never had been any breaking done to any extent north of the trees," and that these were a little south of the section line. On the other hand, Hentges testified that in planting the trees he measured over from the corners "about three rods or so" or "thirty-four or thirty-five feet." This was all the evi-

dence bearing on the true location of the quarter corner. While that of Hentges was somewhat uncertain and lacked in definiteness, that of Haag was direct and clear and based on conformation of the earth, which, if noticed, likely would be remembered. In the early days of settlement, men were not given to breaking up the highway, and quite naturally Hentges, or some one employed by him, might have assumed not without reason that the breaking began on the south line of the highway and have set the willow trees out along the north side of the breaking. We are satisfied that this was done, and that the trees are growing within a foot or two of the section line. Both Haag and Hentges testify positively to the identity of the mound and stake; the only conflict relating to its location. As indicated, we are convinced that the government survey located the quarter corner at a point one foot north of the willows or twenty-seven and four-tenths feet north of the center of a straight line between the sections. This is considerable out of a direct line; but discrepancies even larger than this are frequently discovered in government surveys, and the record is not such as to warrant an inference even that the quarter corner was nearer a straight line between the section corners.

The decree will be modified accordingly, and the cause will be remanded for that purpose. Each party will pay one-half the costs in this court.

*Modified* and *remanded.*