Plaintiff Armstrong sued the defendant Smith for commission on a sale of real estate. The Codner Realty Company intervened, claiming that the sale had been made by Nelson, a member of the firm. The defendant answered, stating that he was willing to pay the commission, and tendered into court the amount of the commission. Plaintiff denied the allegations of the petition of intervention or the right of the intervenor to any part of the commission, and in a second division of his answer alleged an agreement on the part of the intervenor to pay a commission to plaintiff, and asked, if the intervenor were shown to be entitled to the commission, that he (plaintiff) have judgment against the intervenor.
The controversy is between the two real estate brokers, both of whom are licensed and doing business in Webster county. The questions to be determined by the court are questions of fact, many of the facts being undisputed.
Jury was waived and there was trial to the court, which *Page 452 
dismissed as to Smith, the defendant, denied recovery to plaintiff, and gave judgment for $694 to the intervenor. From this judgment plaintiff appeals.
The plaintiff, as a witness in his own behalf, states the agreement with Moeller, who was the agent for the owner, and states that he was authorized to list the farm for sale at $125 per acre, and commission of $2 per acre; that he first suggested the farm to Dr. Martin in June 1937, after it was listed with him by Moeller, and Martin told him that he knew the farm and stated that he did not like it, and that afterwards arrangements were made for the purchase of another farm, but they fell through, and again the question of the Smith farm was taken up. On returning from the examination of some other farms, on June 3, 1937, plaintiff states that the conversation again turned to the Smith farm, and that they went over there and looked at the buildings but did not go in. Two weeks following they went out to look at still another farm, and again talked about the Smith farm, at which time they drove through it, went through the buildings, discussed the soil content, and the field notes were exhibited, the farm being one with which the plaintiff was thoroughly acquainted. Some conversation also occurred about the federal loan on the place. On their return there was a conversation as to the price, in which the doctor suggested $110 per acre. Plaintiff testifies that he said that if the doctor would make an offer of $110, he (plaintiff) would submit it to defendant's agent, and this was agreed to, plaintiff saying he would submit the offer to the agent in the morning. The following morning plaintiff received word from the doctor's wife telling him not to do anything for a day or two, and two days later the doctor called the plaintiff up and told him he had purchased the farm and that plaintiff was in on the commission and to report if he did not hear about it in a couple of days. No payment was made to the plaintiff by the doctor or anyone else, although some conversation was had between the plaintiff and the doctor later on relative to the commission. Plaintiff states he was unacquainted with the fact that Codner or Nelson, or any other firm, had shown the purchaser the farm or negotiated with him.
The purchaser, Dr. Martin, states that the discussion with Armstrong, the plaintiff, about this farm, was about a year and a half before the trial, but the farm was not shown to him at *Page 453 
that time. Another conversation was had about the time the sale for another farm went through. The examination of the farm took place some time before the contract was signed, at which time they looked over the buildings. They went back at the time testified to by plaintiff (when plaintiff showed him the place, told him of the character of the soil in the different parts, and they examined the buildings). At that time the doctor told the plaintiff that he had been informed by Mr. Nelson of the Codner Realty Company that the farm could be bought for $110 an acre. Plaintiff told him he doubted that, because the owner had been holding it for $125. The doctor testified that a few days before his conversation with Armstrong he had told Mr. Nelson to see Mr. Moeller, the defendant's agent. During this last conversation Armstrong asked if it would be all right to see Moeller about it, and the doctor told him it would. When the doctor returned home he states he remembered that he had already told Nelson to see the agent, Moeller, and he directed his wife to telephone Armstrong to wait and hold it up for a few days, which she did. The doctor stated that perhaps three or four days before he went over the farm with Armstrong he had gone over the farm with Nelson, and then had had the talk with him, and was informed he could probably get the land for $110 an acre, and he had told Armstrong at the time that Nelson had told him he could get it at $110. Armstrong expressed some doubt, and then the doctor told him to take the matter down to the bank, and afterwards telephoned him and told him to "lay off" for a few days. Shortly after the last trip with Armstrong, either in the evening of that day or the next day, he saw Nelson and Nelson informed him he could buy the farm for $110 an acre, but the doctor answered that if he bought this land there must be an understanding that Armstrong was to be taken care of in the way of a commission. Nelson brought the contract up and the doctor signed it and afterwards carried out the purchase. Prior to the time that the doctor and Armstrong had gone through the buildings on the land the doctor had told Nelson he would buy the farm at $110. There was some conversation between the witness and Nelson and Codner as to the reason for taking care of Armstrong, and there was some talk concerning the amount, but nothing definite. Later Codner suggested $150. Before the deal was finally completed a garnishment proceeding was instituted *Page 454 
by the plaintiff, but afterwards this seems to have been disposed of and the deed was delivered, and the conversation as to the amount suggested, as the witness recalls it, was between the time of the purchase and the delivery of the deed.
F.C. Moeller, defendant's agent, was also a witness and stated he was first informed by Nelson about the probable sale to Martin on May 28, 1938. He describes the closing of the deal and states that he knew nothing about Armstrong's connection with the transaction, that he had originally placed the farm for sale with fourteen or fifteen real estate men but no one had the exclusive agency. Some talk was had with Nelson on the day that Dr. Martin's proposition was submitted in which Nelson stated that Martin had told him that they should remember Armstrong and that Armstrong had talked with Dr. Martin about the farm.
Nelson, as a witness, stated that he had talked to Martin about the place "off and on" for maybe two years. Martin went with him to view the farm shortly before the sale. He did not know that Dr. Martin had ever looked at the farm with Armstrong. About the middle of May he went up to the doctor's office, showed him the soil maps, and talked over the farm and its price, and at that time he was informed that the doctor would take the place at $110. It was necessary to make some negotiations with the Federal Land Bank in order to pay off the mortgage on the place, and the doctor told Nelson that he must have that privilege, that everything must be cleaned up. He communicated this offer immediately to Moeller, who informed him that if he would get a contract signed he would submit the matter to the owner. He states that the doctor told him that he would like to have Armstrong taken care of because he had bothered Armstrong quite a bit and would appreciate it if he could do a little something for him, but Nelson states that he informed the doctor that he did not feel under any obligation to Armstrong.
Codner, another member of the firm, was also a witness, and testifies as to the conversation with Dr. Martin. He testifies that the doctor said that he wanted it understood that if the deal went through Armstrong was to get something out of the commission. According to the testimony of this witness, he denied that his firm would be obligated, but said that as a favor or accommodation to Dr. Martin, he would do so, but no amount *Page 455 
was fixed or agreed upon, merely that the doctor desired him to make some arrangement. Later on the doctor indicated that he thought that the realty company, or Codner, would at least give Armstrong $100, or at the most $150, and Codner expresses his willingness to do so now.
[1] The plaintiff assigns as error the dismissal of his petition for the reason he claims that the material allegations of the petition were supported by the overwhelming weight and preponderance of the evidence. He argues that the plaintiff was the procuring cause of such sale by producing the purchaser to whom such sale was made. Cases cited by the plaintiff do not correspond as to the facts. Plaintiff's argument that the material facts are not seriously in dispute is not sustained by the evidence. There can be no question that the farm was listed with the plaintiff, as it was with a large number of other real estate dealers. Nor is it disputed that the plaintiff proposed the sale to Dr. Martin, or that they inspected the farm, or that Dr. Martin informed the plaintiff that he would take the place at $110 per acre; but according to Dr. Martin's own testimony the same suggestion had been made to the intervenor at a time prior to the time of the discussion between plaintiff and the purchaser. The actions of Dr. Martin indicate that the arrangement with the Codner Realty Company, or with Nelson as a member of that firm, occurred prior to the time of the final talk with the plaintiff, and that on its coming to his recollection he had told Nelson practically the same thing at a previous time, he held up the transaction with plaintiff and proceeded to close the deal through the Codner Realty Company. It is clear that Dr. Martin felt obligated on account of such priority with the Codner Company to make the deal through it, but that he also felt some obligation to the plaintiff is manifest by the suggestion that was made to the realty company that Armstrong be given a part of the commission. It seems that from the action of the purchaser and the whole transaction, the court, as a trier of facts, was justified in finding that the deal had not only been consummated through the agency of the Codner Company but had been first suggested by them, the principal cause for hesitation at any time having been Dr. Martin's refusal to purchase at the higher price. We think that the court was justified in its finding that the sale was both initiated and consummated through the agency of the intervenor. The action of Dr. Martin *Page 456 
throws light upon what was in his mind as to whom the credit was due for the sale. We do not think the court erred in its finding in this respect.
[2] The second division of plaintiff's assignment of error is as to the dismissal of plaintiff's cross-petition against the intervenor. It does not appear from the evidence that any amount was agreed upon or promised by the intervenor. If there was such an oral agreement, no amount was fixed. But plaintiff insists in his cross-examination that the amount which should be paid would be the full amount of the commission — $694. It is unreasonable to suppose that the Codner Realty Company, or its members, ever agreed to any such proposition — that is, to turning over the whole amount of the commission. It is likely that they were willing, prior to the institution of the suit, to grant a portion of the commission, as they suggest, for the accommodation of Dr. Martin; but no amount was fixed and no definite agreement was made, and it would have been impossible for the district court to have determined from the evidence that there was a binding agreement to pay any definite sum.
[3] The third assignment is in substance covered by the first two assignments — that is, the alleged error of the court in finding that the intervenor sustained the allegations of its petition of intervention. We think there was evidence sufficient to satisfy the court that all the real estate agents were authorized to make the sale of the land. Having procured a purchaser, and the court having so ruled, the agent was entitled to his commission. Plaintiff argued that the record shows that Armstrong conducted the preliminary negotiations, but we do not think that the evidence so shows. Here was a case of two real estate agents, both empowered to dispose of the land, and both able to dispose of it at a reduced price. The record shows that the preliminary negotiations were conducted by the intervenor.
Plaintiff cites as authority a number of cases. We have examined these cases and, as indicated, we find that the facts in all the cases cited differ to a considerable extent and that none is controlling here.
[4] The plaintiff is confronted with the proposition that this action is a law action, and, if supported by the evidence, the finding of the court on conflicting evidence is as conclusive upon us as would be the verdict of a jury. Maddy v. Park, *Page 457 220 Iowa 899, 901, 262 N.W. 796, 797; Duke v. Park, 220 Iowa 889,892, 262 N.W. 799, 800; Jones White v. Park, 220 Iowa 894, 896,262 N.W. 797, 798, 264 N.W. 700; Jeffries v. Prall, 215 Iowa 763,264 N.W. 816. To have been entitled to recover it would have been incumbent upon the plaintiff to show that he was the efficient and procuring cause of the sale. We think that this was not established. See Donahoe v. Denman, 223 Iowa 1273, 275 N.W. 154; MacVicker v. Western Asph. Pav. Corp., 201 Iowa 355, 361,207 N.W. 378, 381; Tokheim v. Miller, 194 Iowa 337, 341,189 N.W. 790, 791; Reeve v. Shoemaker, 200 Iowa 983, 986, 205 N.W. 742,743, 43 A.L.R. 839.
[5] Plaintiff's claim that he effected the sale is doubtful. Before anything had been done, before he had communicated to the principal or the principal's agent, the understanding between him and the purchaser was revoked, at least to the extent of notifying the plaintiff that the matter must be held up. As a matter of fact, at no time before the completion of the sale did the plaintiff ever notify Moeller of his activities in regard to the sale. It appears to us that the language in the Tokheim case, supra, applies to the situation here. In this case the court said:
"Granting that Tokheim was influential and instrumental in directing the mind of Hanna to the purchase and in holding it there, this of itself entitled him to nothing. This could have been true as to all of the agents. It was a part of their competition. The rule remains that the winning agent must be the one who first procures the consent of the purchaser to enter into a contract on terms satisfactory to the seller"
After the telephone message from Dr. Martin, sent by Mrs. Martin, not only did the plaintiff fail to communicate to the principal the fact that he could dispose of the land for $110 per acre, but he had no authority so to do, and so far as he was personally concerned, he had no knowledge that there could be a sale at the price fixed; so that after such communication, after the negotiations had been called off by the purchaser, he would have been in no position to carry, and could not have carried, any concrete proposal to the defendant's agent.
The suggestion that Dr. Martin would not complete the deal unless a promise was given to reimburse Armstrong is, to some extent, negatived by his actions. It is not clear from *Page 458 
the testimony of either Dr. Martin or the plaintiff that there was any such specific promise, but notwithstanding this, he signed the contract and, as the record shows, delivered a check by way of binder for the sum of $2,500 and completed the deal without notifying Armstrong or without securing any definite promise of any specific amount. The conversation testified to by any of the parties does not disclose any contract of any kind as to the amount of the compensation to be given plaintiff, and certainly there was none for the amount of $694.
We think the court was right in its ruling and finding that the intervenor was entitled to the commission. We think that the case should be, and it is, affirmed. — Affirmed.
OLIVER, C.J., and HAMILTON, STIGER, SAGER, BLISS, and MILLER, JJ., concur.