THOMAS P. LANNIGAN et ux., appellees, v. LAVAL H. ANDRE et ux., and IOWA SECURITIES COMPANY, a corporation of Black Hawk County, appellants.

No. 47700.

(Reported in 44 N.W.2d 354)

OCTOBER 17, 1950.

Loyal S. Fairall and Boardman, Cartwright & Druker, all of Marshalltown, for appellants.

Roy L. Pell and Joe B. Tye, both of Marshalltown, for appellees.

MANTZ, J.— A suit to establish a disputed boundary is a special proceeding, tried as an ordinary proceeding, and under the provisions of chapter 650, Code of 1946. The court found for plaintiffs and defendants have appealed.

I. This appeal deals with errors assigned and argued. Plaintiffs in pleading alleged that a common boundary line between their property and that of the Andres was in dispute. They alleged that there was a boundary line between such properties which had been established by acquiescence and adverse possession as between the parties· and former owners of said respective properties for a period exceeding the statutory limitation; they asked that the court appoint a commission, under the terms of such statute, and for other relief. Laval Andre and Dorothy Andre, hereinafter referred to as the defendants, denied plaintiffs' claim that the line between the properties had been established by acquiescence, and by motion requested that such issue be tried before the appointment of a commission.

The court heard evidence on such issue and thereafter found and decreed that plaintiffs had established their claim of acquiescence. Such is the issue here on appeal.

■■ II. The case is not here triable de novo. Whether plaintiffs have established their claim of acquiescence is a question of fact. The burden is upon them to establish such fact. Bohall v. Neiwalt, 75 Iowa 109, 39 N.W. 217; Mitchell v. Wilson, 70 Iowa 332, 30 N.W. 588; Vittoe v. Richardson, 58 Iowa 575, 12 N.W. 603; Leathers v. Oberlander, 139 Iowa 179, 117 N.W. 30; Yocum v. Haskins, 81 Iowa 436, 46 N.W. 1065; Eggers v. Mitchem, 239 Iowa 1211, 34 N.W.2d 603; Miller v. Mills County, 111 Iowa 654, 82 N.W. 1038; Evert v. Turner, 184 Iowa 1253, 169 N.W. 625.

The finding and decree of the trial court if supported by competent evidence is conclusive and cannot be disturbed by this court. Weikamp v. Jungers, 150 Iowa 292, 129 N.W. 953.; Concannon v. Blackman, 232 Iowa 722, 6 N.W.2d 116; Martin v. Frazier, 172 Iowa 63, 152 N.W. 14; Eggers v. Mitchem, supra; Fair v. Ida County, 204 Iowa 1046, 216 N.W. 952; Oster v. Devereaux, Iowa, 98 N.W. 579; Armstrong v. Smith, 227 Iowa 450, 288 N.W. 621; Maddy v. Park, 220 Iowa 899, 262 N.W. 796; City of Cherokee v. Aetna Life Ins. Co., 215 Iowa 1000, 247 N.W. 495.

■ Where the owners of adjoining property acquiesce for a period of ten years or more in a line definitely marked in some

1030

manner as a boundary between them such becomes the true boundary. Eggers v. Mitchem, supra; Miller v. Mills County, supra; Minear v. Keith Furnace Co., 213 Iowa 663, 239 N.W. 584; Dwight v. City of Des Moines, 174 Iowa 178, 156 N.W. 336; Keller v. Harrison, 139 Iowa 383, 116 N.W. 327.

■ With the legal rules in mind, we will examine the record to determine whether there is contained therein sufficient evidence to sustain the finding and decree of the trial court. While there are some conflicts in the evidence, we hold that on the whole it sustains the ruling of the trial court. Following is a brief summary of the evidence bearing on the principal issue, to wit, acquiescence as claimed by the plaintiffs.

III. Prior to 1914, one A. L. Lord owned an approximate five-acre tract of unplatted, unsurveyed land in Marshalltown, Iowa. He and his family had a dwelling house thereon which is still in the possession and occupancy of a daughter. She has lived there for over sixty years. Lord lived there until his death in 1931. In 1916 he sold a part of the acreage to a man named Ennis, being the part described in paragraph 4 of plaintiff's petition. In 1914, Lord built a house on the lot for Ennis. Because of the fact that the whole tract was unplatted and unsurveyed, the description was by metes and bounds. The part sold to Ennis was 180 feet long by 50 feet wide and it fronted on West Main Street, Marshalltown. Ennis at once went into possession and remained there until he sold it to plaintiffs about November 10, 1936. The land to the east of Ennis's purchase remained in the possession of Lord and his heirs until sold to one Phillips in 1948. Phillips bought the same from Etta Lord Thayer and other heirs of her father. The land sold to Phillips was 215 feet long and 65 feet wide. Phillips sold the land to defendants in 1949. On May 12, 1937, plaintiffs purchased from the Lord heirs a tract of land 35 by 50 feet, same being described in paragraph 4 of their petition. This purchase was just south of the land purchased from Ennis and made plaintiffs' tract 215 feet long by 50 feet wide. On the east side of the 35-foot tract there was a fence which was in line with the east side of the 180-foot tract. Thus there is a common line of 215 feet between the land owned by plaintiffs and that owned by defendants. The topography of

the two tracts was not the same, the part remaining and belonging to the Lords being higher. When Lord built the house which he sold Ennis and which now is owned and occupied by the plaintiffs, it was necessary to level off and grade the land to some extent. It was at that time plaintiffs claim that a dividing or division line was fixed and determined by Ennis and Mr. Lord. Mr. Ennis was a witness in the case and testified that he helped Mr. Lord grade the lot; that Mr. Lord at that time pointed out where the east line was and that the lot was graded accordingly. On this point we quote from the testimony of Mr. Ennis:

"Q. What did he (Mr. Lord) do or show you? A. Well, he showed me the line of the lot, both back and forward, and we put some ground stakes there right at that time. * * * I leveled off the lot by taking the east side down quite a little bit and leaving a bank there. I sloped the bank with the bottom of the slope on the line which we had established. Mr. Lord pointed out to me where the east boundary line of my lot was and I graded it accordingly."

Mr. Ennis further stated that when he sold to plaintiffs he pointed out the east boundary. Mr. Ennis and his boys placed some cement slabs, which slabs are still there and follow the direction of the line. In addition, when plaintiffs purchased from Ennis there was a fence running on a line with the cement slabs and the grade on the east boundary.

The record is clear that a point 13½ feet east of the foundation wall of plaintiffs' home marked the foot of a grade from the Andre property to the property of plaintiffs. This grade was placed there when Lord and Ennis graded to level off the respective properties. All the evidence is to the effect that the lot to the east (Andre lot) is higher than that of plaintiffs and that the elevation continues the entire 215 feet. Mr. Phillips testified that the property, when he bought it from the Lord heirs, was higher than that to the west—from a foot or so at the south end to something like two feet to the north. Both Lannigan and his wife testified as to the grade which existed when they moved there in 1936; also, the fence and the slab wall. They testified that when they bought of Ennis, the latter pointed out to them

the east line of the property being purchased. They claim they mowed the grass up to that line—also, the rear had a garden up-to it.

Mrs. Thayer, a daughter of Mr. Lord, testified that she had lived on the second lot east of plaintiffs' lot for sixty years. She stated that before plaintiffs moved upon the premises there was a fence on the east side of their property and just east of their garden spot; that the present fence is in the same place.

The plaintiffs claim that there was no dispute as to the line prior to the time defendants bought the land in 1949. The defendants claim that there was a dispute about it shortly after Mr. Phillips bought. There was some evidence from which it might be inferred that the plaintiffs were not sure of the line and that when interrogated by Mr. Phillips they so stated. They did state that Phillips did talk about having his lot surveyed, but claimed they did not agree to enter into it and that he did not have any surveying done. There is no evidence that Lord or any of his heirs ever made any claim that the line was other than that claimed by plaintiffs, to wit, 13½ feet east of his house foundation and then north and south along the line of the grade, the stone slabs, and the fences. The court found that there was no dispute over the boundary until 1949.

As to the 35 feet on the south end of the land purchased by Ennis there was a fence on the east side before plaintiffs bought. The evidence is that this fence had been there for many years. Plaintiffs used the land west of it up to the fence, and the Lord heirs used that to the east up to said fence. Both had gardens there; sometimes flowers close to it.

We hold that there is ample evidence to sustain the decree of the trial court that the line involved had been acquiesced in longer than the statutory period.

 IV. Another error argued was the failure of the trial court to appoint a commission to make a survey. As the parties had litigated the question of the acquiescence in the disputed boundary line, we can see no need for the appointment of a commission. Any report a commission would make would not bind the court. Coombs v. Quinn, 66 Iowa 469, 23 N.W. 928; Schoen v. Harris, 162 Iowa 321, 143 N.W. 1108.

We hold that the court did not err in failing to appoint a commission. We hold that the judgment of the trial court was right and the case is affirmed.—Affirmed.

All JUSTICES concur.