# IN THE COURT OF APPEALS OF IOWA

No. 23-0271
Filed June 19, 2024

**DWIGHT HEARING,**
    Plaintiff-Appellant,

**vs.**

**KEVIN ALEXANDER and K&L PROPERTIES, LLC,**
    Defendants-Appellees.

_____

Appeal from the Iowa District Court for Woodbury County, Roger L. Sailer,

Judge.

A property owner appeals the district court's ruling that he failed to establish

a new boundary by acquiescence. **AFFIRMED.**

Anthony Osborn of Gehling Osborn Law Firm, PLC, Sioux City, for

appellant.

Richard H. Moeller of Moore, Corbett, Moeller & Meis, L.L.P., Sioux City, for

appellees.

Considered by Bower, C.J., Langholz, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**LANGHOLZ, Judge.**

This is a dispute about the boundary between a large tract of farmland and a neighboring residential property in a rural part of Sioux City. The legal boundary of the properties follows the section line.[1] But at some point in or before the 1960s, a barbed-wire fence was erected on the farmland separating most of the land from a slice on the border that was densely wooded and had uneven or sloped terrain. The fence curves rather than paralleling the straight section line, so it ranges from sixty-five to eighty-four feet from the legal boundary between the two properties.

Dwight Hearing seeks to establish that fence line as the boundary by acquiescence, arguing that the prior owners of the farmland acquiesced to this boundary for at least ten straight years. *See* Iowa Code §§ 650.6, .14 (2021). But after a bench trial, the district court agreed with the current owner of the farmland—K&L Properties, LLC[2]—that Hearing failed to meet his burden to show by clear evidence that any prior owners of the farmland knew Hearing's family considered the fence line to be the property boundary and agreed to that treatment for ten years. Hearing argues that the court's finding is wrong, especially because the court also found that "for more than 50 years" the owners of the farmland had neither "crossed the fence line" nor "entered," "used," or "voiced any claim for possession of the disputed land between the fence line and the section line." And he contends that we should conduct a de novo review to reach a different finding.

---

[1] In Iowa's land survey system, every county is divided into townships, and most townships are divided into thirty-six sections, each a square mile (or 640 acres). *See Schaer v. Webster Cnty.*, 644 N.W.2d 327, 330 n.2 (Iowa 2002).

[2] K&L's owner, Kevin Alexander, is also a party to this suit. But as their interests are aligned and K&L is the property owner, we refer to them jointly as K&L.

But under the governing statute, our standard of review is for correction of errors of law. So we are bound by the district court's fact findings—the same as if they were made by a jury—so long as they are supported by substantial evidence. And given the sparse evidence presented by Hearing about the period before K&L's ownership of the farmland, substantial evidence supports the district court's finding that he failed to prove the prior landowners had notice that Hearing's family considered the fence to be the boundary fence and consented to that for ten straight years. Even if the evidence could have also supported a contrary finding, that is not enough to reverse the court's judgment under review for corrections of errors of law. We thus affirm.

## I.

Hearing was born in 1959 and grew up living on the residential property on one side of this border dispute. Though he lived elsewhere in Sioux City for most of his adult life, he still spent much time on the property over the years. Around 2020, he moved to reside on the property again. And by the trial, he had contracted with his mother to buy the property.

K&L bought the 187-acre tract of farmland that borders Hearing's property in 2009. The record is void of any evidence about the farmland's prior owners. In 2021, after hiring a surveyor to confirm the boundary of the farmland, K&L began removing the fence, clearing trees, and moving dirt between the old fence and the legal boundary to construct a farm road and a new fence. Hearing and his neighbors failed to convince K&L to stop its work. So they sued.[3]

---

[3] The other neighbors did not join Hearing's appeal, so we focus on only his claims.

Hearing claimed that the boundary between the farmland and his residential property was the fence line because K&L and the prior owners of the farmland had acquiesced to that boundary for ten straight years as required by Iowa Code section 650.14.[4]  He thus sought a temporary and permanent injunction against K&L's activities on his side of the alleged boundary line, a declaratory judgment of his rights, and damages for the tree clearing and dirt moving that already occurred.

The district court granted a temporary injunction to prevent any further changes to the land during the pending proceeding.  But after a bench trial in November 2022, the court ruled that Hearing failed to prove his claim of boundary by acquiescence and dismissed the suit.  The court first found that Hearing failed to prove that K&L acquiesced to the fence-line boundary after it bought the land in 2009—a finding that Hearing does not challenge on appeal.  Then it turned to the "much closer question . . . as to whether the fence line may have been established as a boundary by acquiescence at some point prior to K&L's purchase of its land."

The court found that some prior owner of the farmland erected the fence "more than 60 years ago."  The court also found that "[t]he fence was initially constructed for the purpose of keeping in the cattle that were grazed by the former owners on the land" rather than as "a boundary marker."  And it found that in the five decades since the fence was constructed, "neither K&L nor its predecessors in interest ever crossed the fence line, ever entered the disputed land, ever used the disputed land for any purpose, or ever voiced any claim for possession of the disputed land between the fence line and the section line."

---

[4] He also originally asserted a claim to the land under adverse possession but withdrew that claim at the start of trial.

As to the use of the disputed land by Hearing and his family, the court found they used it "for many years, until the mid-1980's, to raise cattle, hogs, and chickens, which they raised in yards extending from just north of their house all the way to the fence line." And the court found that they "constructed a barn, a cattle shelter, and a shed on the disputed property," but that "[o]nly the shed remains, which was built in the late 1960's, finished around 1970, and is now in a dilapidated and abandoned condition."

Applying the law, the court recognized "that acquiescence may be inferred by the silence or inaction of one party," but only when the party knew "of the boundary line claimed by the other." And the court concluded that it "simply does not have sufficient evidence to find, by the requisite standard of 'clear evidence' that K&L's predecessors in interest were given either actual or constructive notice of Hearing's claimed possession, which is a prerequisite for a finding of boundary by acquiescence." The court reasoned that the evidence was lacking in two areas: the actual knowledge of the prior owners of the farmland and the extent of the Hearing family's conduct on the land to put the landowners on notice of their claim.

On the first, the court explained that Hearing provided no evidence as to which prior owner of the farmland "erected the fence in the first place" or "exactly when the fence was erected." He failed to show whether that owner was the only owner until K&L bought it in 2009 or "how many other landowners there were." And "[i]f there were multiple landowners, there is no evidence in the record that each and every one of them, or at least each and every one of them for a continuous 10-year period, recognized and acquiesced in the fence line as a property boundary" rather than merely a barrier for grazing cattle.

On the second area of missing evidence, the court explained that while perhaps the Hearing family's conduct could have "put a neighboring landowner on notice that the Hearings believed the fence line to be the property line," the court could not decide "under the evidence presented, what the Hearing family's use of the disputed property looked like at any given time or for any given ten-year period." The court noted that "Hearing testifie[d] that his family's use of the disputed property for livestock ended 'in the mid-80's,' but there is no evidence as to when it began or what it entailed at various times." And while there was some evidence about the Hearings building the now-dilapidated shed in the late 1960s, there was "no evidence" about:

> When the barn was constructed; when the cattle shelter was constructed; where those structures were located; when those structures were demolished; whether their use was continuous for ten years or more and, if so, when; at what times the Hearing family raised hogs; at what times the Hearing family raised cattle; at what times the Hearing family raised chickens; how many of these animals were located in the disputed property and during what time periods; etc.

Given this failure of proof, the court reasoned that it could not tell whether "the Hearings [had] chickens, cattle, and hogs all at the same time, all placed in structures that were on the disputed land for ten continuous years" rather than another scenario, such as having "chickens for several years that they allowed to roam into the disputed land, then hogs for a year that they fed on the disputed land, then cattle under the cattle shelter for one season." The court thus declined to establish a new boundary and dismissed the case. Hearing now appeals.[5]

---

[5] K&L originally cross-appealed the court's order exonerating Hearing's $5000 bond on the preliminary injunction. *See* Iowa R. Civ. P. 1.1508. But K&L then voluntarily dismissed the cross-appeal. *See* Iowa R. App. P. 6.1201(2).

II.

Before we reach the merits, the parties dispute the appropriate standard of review. The dispute is understandable—our appellate courts have applied both de novo and error-correction standards to boundary-by-acquiescence claims dating back to 1890. *See Albert v. Conger*, 886 N.W.2d 877, 879 n.2 (Iowa Ct. App. 2016) (collecting cases). Hearing asks for de novo review, arguing the case was functionally tried in equity and the formalities of Chapter 650 were not followed. *See Sille v. Shaffer*, 297 N.W.2d 379, 381 (Iowa 1980); *Paseka v. Weaver Farms Ltd. Liab. Co.*, No. 03-0417, 2004 WL 573788, at *2 (Iowa Ct. App. Mar. 24, 2004). K&L, conversely, points to Iowa Code section 650.15, which instructs that boundary-dispute appeals are "heard as in an action by ordinary proceedings." Under this statute, our review is for correction of "errors of law" and "we are bound by the district court's findings of fact if supported by substantial evidence." *Ollinger v. Bennett*, 562 N.W.2d 167, 170 (Iowa 1997); *see also* Iowa R. App. P. 6.907.

We choose to follow the statute. In cases employing de novo review, the parties agreed—on appeal or in the district court—that the claims were tried in equity, so the appellate court reviewed in kind. *See, e.g.*, *Sundance Land Co, LLC v. Remmark*, No. 22-0848, __ N.W.3d __, 2024 WL 2982688, at *3 (Iowa June 14, 2024); *Sille*, 297 N.W.2d at 380; *Albert*, 886 N.W.2d at 880; *Nelson v. Cross*, No. 22-2006, 2023 WL 5607096, at *3 (Iowa Ct. App. Aug. 30, 2023); *McMahon v. Rousselow*, No. 14-0421, 2015 WL 576021, at *1 n.1 (Iowa Ct. App. Feb. 11, 2015); *Paseka*, 2004 WL 573788, at *2. But there is no party agreement here. And the trial transcript is silent on the nature of the proceeding. Indeed, K&L points to many objections raised and ruled on during the bench trial—the "litmus

test" for an action at law. *Citizens Sav. Bank v. Sac City State Bank*, 315 N.W.2d 20, 24 (Iowa 1982).

What's more, in many cases, the statutory standard prevailed whatever the nature of the trial proceedings. *See, e.g.*, *Egli v. Troy*, 602 N.W.2d 329, 332 (Iowa 1999); *Ollinger*, 562 N.W.2d at 170; *Tewes v. Pine Lane Farms, Inc.*, 522 N.W.2d 801, 804 (Iowa 1994); *Witting v. Schinstock-McConnell*, No. 22-1301, 2023 WL 5092210, at *2 (Iowa Ct. App. Aug. 9, 2023); *Saunders v. Snyder-Johnson*, No. 21-0531, 2022 WL 3069836, at *3 (Iowa Ct. App. Aug. 3, 2022); *Mayhugh v. Dea*, No. 15-0142, 2015 WL 5576950, at *2 (Iowa Ct. App. Sept. 23, 2015); *Gartin v. Farrell*, 13-0061, 2014 WL 69662, at *4 (Iowa Ct. App. Jan. 9, 2014). And our supreme court has long recognized that a boundary-by-acquiescence claim may be tried to the court regardless of whether the other statutory boundary-dispute procedures, like appointing a commission of surveyors, are invoked. *See Lannigan v. Andre*, 44 N.W.2d 354, 357 (Iowa 1950); *see also* Iowa Code § 650.6 (providing that court has discretion to try boundary-by-acquiescence issue without appointing commission). Given this weight of authority, the trial record, and the lack of party agreement, we see no basis to accept Hearing's invitation to depart from the statutory standard of review. Hearing thus has a heavy burden—the same as if he were challenging "a jury verdict." *Ollinger*, 562 N.W.2d at 170.

III.

To establish a new property boundary by acquiescence, a party must prove that the new boundary has "been recognized and acquiesced in by the parties or their grantors for a period of ten consecutive years." Iowa Code § 650.6; *see also*

*id.* § 650.14 (providing that if the court finds the new boundary has "been so recognized and acquiesced in," the boundary "shall be permanently established"). Acquiescence, under the statute, means "the mutual recognition by two adjoining landowners for ten years or more that a line, definitely marked by fence or in some manner, is the dividing line between them." *Sille*, 297 N.W.2d at 381. "*Both parties must be aware that the asserted property line is being treated as a boundary.*" *Ollinger*, 562 N.W.2d at 170 (emphasis added).

Thus, erecting a fence merely as a barrier for animals—rather than marking a boundary line—does not establish acquiescence. *See Brown v. McDaniel*, 156 N.W.2d 349, 352 (Iowa 1968). Even so, later conduct by the parties treating the fence as the boundary line may be acquiescence that satisfies the statute. *See Mahrenholz v. Alff*, 112 N.W.2d 847, 850 (Iowa 1962). No overt act agreeing to the boundary line is required—acquiescence "may be inferred by the silence or inaction of one party who knows of the boundary line claimed by the other and fails to take steps to dispute it for a ten-year period." *Tewes*, 522 N.W.2d at 806. And some conduct by that other party on the land could be so open and obvious a claim of the boundary that it may establish that the silent party "should be required to take notice thereof." *Id.* at 807 (cleaned up); *see id.* at 808 (holding, in a dispute over boundary between two parcels of productive farmland, that each side's conduct consistently farming right up to claimed boundary over two decades put landowner on notice of claim); *Olson v. Clark*, 109 N.W.2d 441, 444–45 (Iowa 1961) (holding that landowner was put on notice of claim by a farming operation "readily discernable" from the road).

Hearing—the party seeking to establish the new boundary—has the burden of proof. *Mahrenholz*, 112 N.W.2d at 849. And he must meet it by "clear evidence." *Tewes*, 522 N.W.2d at 806. "The issue of acquiescence presents mostly fact questions." *Brown*, 156 N.W.2d at 351. So on appeal from a dismissal of a boundary-by-acquiescence claim, we do not ask whether the evidence would have supported a finding of acquiescence, but whether it supports the finding that was actually made by the district court. *See Van Oort Constr. Co. v. Nuckoll's Concrete Serv., Inc.*, 599 N.W.2d 684, 691 (Iowa 1999).

In his reply brief, Hearing abandons any claim that K&L acquiesced to his asserted boundary line and instead "focuses exclusively on [K&L's] predecessors in interest."[6] He argues that the district court's finding that the fence was built originally as a barrier rather than a boundary line is not supported by substantial evidence. And he contends that regardless, his family's use of the land up to the fence was a sufficiently obvious claim to the boundary that the prior landowner's silence—whoever they were and however many there were—for at least fifty years should support a finding of acquiescence. But neither argument succeeds.[7]

---

[6] Hearing explained, "Given the conflicting evidence at trial, [Hearing] is not challenging the trial court's finding that [Hearing] failed to meet his burden of proof relative to his claim that [K&L] acquiesced in the fence as a boundary."

[7] We recognize that the supreme court's reasoning in *Sundance Land Company, LLC, v. Remmark*—which was decided after this case was submitted to our court—may raise a question whether Hearing can succeed on a claim based only on acquiescence by prior landowners for a ten-year period in the distant past that does not continue "up to the present or near-present" when "the current controversy arose." *See Sundance*, 2024 WL 2982688, at *7. But we do not reach this question because we are affirming the dismissal of Hearing's claim on other grounds and the parties have not briefed this issue.

The district court's finding that the fence was originally constructed as a barrier for livestock—not as a boundary—is supported by substantial evidence. As the court reasoned in making the finding, the evidence (including testimony from Hearing and the other plaintiffs) showed that given the areas of dense woods and uneven terrain, it would have been "difficult and resource-intensive" to build the fence on the section line. And building the fence where it was would have protected cattle from going into the woods and uneven terrain. So that "lend[s] credence to the idea that a cattle fence would logically have been constructed where it was." Hearing agreed in his testimony that for some extended periods of time cattle grazed on the farmland. And while his somewhat conflicting and ambiguous testimony about when he believed cattle were first on the land could be interpreted in different ways, we cannot say the district court's finding was without the support of substantial evidence.[8]

So too does substantial evidence support the court's finding that Hearing failed to prove the prior landowners knew that his family claimed the fence line as the border. True, the court found that for some periods, the Hearing family used the land beyond their legal boundary and up to the fence to raise cattle, hogs, and

---

[8] What's more, the important aspect of the court's finding is that the fence was not erected as a claimed boundary line, rather than the precise alternative purpose for its erection. And the difficulty of erecting the fence on the boundary line and the largely unfarmable nature of the area sliced off by the fence supports this aspect of the finding no matter whether cattle were immediately kept on the farmland or only later. So too does the legal boundary's location on the section line—which would have been apparent to any landowner from the property's legal description—support this finding. The court could reasonably conclude that no prior landowner would have thought that the meandering fence line was the section line, especially since it received similar deposition testimony about K&L's knowledge of the section-line boundary.

chickens; and they eventually constructed a barn, a cattle shelter, and a shed on that land. The court also found that the landowners never objected or even stepped foot past the fence. But as the court thoughtfully explained, Hearing provided only this bare summary of his family's activities. And without more detailed evidence, the court reasoned that it could not find that the conduct had clearly occurred in a manner that would have given notice to the landowners for ten straight years.

Hearing's case was also weakened because he presented no evidence about the prior landowners beyond the facts that they never crossed the fence or objected to his family's use of the land. So we do not know whether it is likely that they would have seen any of the Hearing family's activities or buildings on the land. And because the land sliced off by the fence was generally wooded and uneven, without much productive use to the landowners, and not easily accessible or visible from any public roads, we cannot say that the district court needed to infer that the landowners knew of the Hearing family's claims merely because it did not cross the fence or complain to them. These circumstances are quite different from the choice to refrain from crossing an informal boundary in the middle of productive farmland, *see Tewes*, 522 N.W.2d at 808, or to stay silent about farming activities visible from the road, *see Olson*, 109 N.W.2d at 444–45.

We need not—and do not—decide whether the evidence before the district court would have been sufficient for a court to have found that the unknown prior landowners did acquiesce to the fence as the boundary line. That's not the question because the court did not make that finding. *See Van Oort Constr.*, 599 N.W.2d at 691. We ask only whether substantial evidence supports the finding

that the court did make.  *See id.*  Given the thin record before the district court about the period on which Hearing now focuses, we cannot say that the court erred in finding a lack of clear proof of acquiescence.

Thus, substantial evidence supports the district court's judgment that Hearing failed to prove that the prior owners of K&L's farmland acquiesced to the fence line as the boundary line.  Hearing makes no other claim of error.  And so, we affirm the dismissal of his case.

**AFFIRMED.**