A. McGovern, Loes Bros., Frank Takes and Hugo Weber, Appellants, v. John Heery, Appellee. James A. Gavin, Mrs. Hugh Dixon, Charles E. Gavin and Jones County, Defendants.

**Boundaries:** REPORT OF COMMISSIONERS: CONCLUSIVENESS. The district court is not bound by the report of commissioners appointed to locate alleged lost boundaries of land, but may set their report aside and make new and different findings, when warranted by the evidence. The commissioners are mere officers of the court appointed to aid in locating the true boundaries.

**Same:** ACQUIESCENCE: EFFECT. Where the court finds from the evidence that the corners and lines alleged to have been lost or in dispute have been established by acquiescence of the parties for the statutory period, it is unnecessary for the court to proceed further and ascertain where the lines and corners were originally located, or where commissioners might locate them.

**Same:** APPEAL: TRIAL DE NOVO: REVIEW OF EVIDENCE. An action to establish alleged lost corners and lines is a special proceeding and not triable *de novo* on appeal; and where the findings of the trial court are based upon conflicting evidence they have the force of a verdict of a jury, and the evidence will not be reviewed for the purpose of determining its weight, or the credibility of the witnesses.

**Same:** ESTABLISHMENT OF CORNERS AND LINES: DUTY OF COMMISSIONERS: ACQUIESCENCE. It is the duty of commissioners appointed to locate lost or disputed corners and lines to first ascertain, if possible, their original government location; but if this cannot be done

then they should proceed under the rules and by survey to ascertain where they were originally located, and mark the same as the original government corners and lines, and report their doings to the court. If, however, acquiescence of the parties in a certain line is pleaded and proved no further investigation as to the government lines and corners will be made by the court, but their agreement, which may be inferred from long acquiescence, will determine the controversy.

**Same:** TAXATION OF COSTS. The taxation of costs in proceedings to establish lost corners is largely a matter of discretion with the court, and in the absence of an abuse of such discretion its ruling will not be disturbed.

*Appeal from Jones District Court.*—HON. W. N. TREICHLER, Judge.

TUESDAY, MAY 13, 1913.

ACTION to establish corners alleged to be lost or in dispute. Decree for defendants, dismissing the petition. Plaintiffs appeal.—*Affirmed.*

*Herrick, Cash & Rhinehart* and *E. D. Hogan,* for appellant.

*J. W. Doxsee,* for appellees.

GAYNOR, J.—This action is brought under chapter 5, title 21, of the Code of 1897. It is alleged by the plaintiff that the original government corners and boundaries of the lands between the several parties hereto have been lost or destroyed, and are in dispute, and praying that a commissioner be appointed, and that said corners and boundaries be ascertained and permanently established. All the defendants made default, except the defendant John Heery, who appeared and filed an answer, alleging, among other things, that the fences as now located and which inclose the property, concerning which the dispute is made, are upon the true lines,

as surveyed from the true corners of the sections wherein the land is located, and that there is no dispute over the lines affecting the land of this defendant; that the lines as now marked by said fences have been recognized and acquiesced in by the parties interested for more than ten years, and have been recognized as the true lines between the adjoining properties, and have been recognized and acquiesced in by this plaintiff and the joining proprietors and their grantors for more than fifteen consecutive years; that, thereafter, the court appointed three civil engineers as commissioners, and directed them to proceed to locate the lines, corners, and boundaries claimed to be lost or in dispute, and to fix and establish the true lines and boundaries, and to hear evidence and report their finding and the evidence taken by them touching the question of acquiescence.

It appears that the commissioners so appointed proceeded, under the court's order, not only to survey the premises in question and to determine therefrom where the true corners and boundary lines were, but also to hear testimony and examine witnesses with respect to the question of acquiescence. At the conclusion of the hearing of the testimony on the question of acquiescence, the commissioners proceeded to make a survey of the premises, and after the completion of the survey met and heard arguments of counsel; that, thereafter, the commissioners filed in said court their report of said survey, together with a map or plat of the same, and a copy of the evidence taken before them which was made a part of their report; and in their report found against the claim of acquiescence, and reported that they made their survey according to the rules laid down by the "Manual of Instructions" furnished them by the General Land Office, in Washington, and submitted to the court a map claimed to show the original government marks, as found by them, as well as the corners fixed by them, together with the measurements made also showing the location of the disputed fences and other matters relating to their doings, touching the location of the corners.

It appears that the report of the commissioners being submitted to the court, the court found that the lines and boundaries alleged to have been in dispute were not in dispute, that they had been established and acquiesced in by the parties for more than the statutory period and fixed the corners at, and the lines on, the boundaries so found to have been acquiesced in by the owners and their grantees, and the court refused to fix the corners at the point found, and reported to be the true corners by the commissioners. From this action, plaintiffs appeal, and complain:

That the court had no right or authority to establish the lines or corners at any other place or point than that found by the commissioners; that the commissioners appointed by the court had full power to find the true line, and that their finding had the same force and effect as a verdict of the jury, and that their finding that there was no acquiescence was also binding on the court, as the verdict of a jury, and that the court erred in finding the true lines and boundaries to be established by acquiescence against the finding of the commissioners that there was no acquiescence, and in support of this cites *Yocum v. Haskins,* 81 Iowa, 436. But this case relied upon by the plaintiff has been overruled by subsequent decisions of this court. See *Welkamp v. Jungers,* 150 Iowa, 292, wherein it is said: "Plaintiff's first contention is that the finding of the commissioners should have been given the same force and effect as accorded the verdict of a jury, and, as there was substantial evidence in support of the commissioners' report, it should have been accepted and not set aside." Such was the holding in Yocum v. Haskins, but that holding was subsequently overruled by this court. In *Doolittle v. Bailey,* 85 Iowa, 398, this court said: "The lower court had full power to make a finding different from that of the commissioners, so long as it had testimony before it on which to base a different finding."

1. BOUNDARIES: report of commissioners: conclusiveness.

It seems to us that if the court, upon an examination

of the testimony submitted, in support of the claim of acquiescence, found therefrom that the lines and boundaries claimed to be lost or in dispute had been established and acquiesced in by the parties interested for more than the statutory period, and therefore became the fixed and definite boundaries and corners of the land, that it would be a useless and idle thing for the court to proceed further in the investigation, and determine, notwithstanding the lines had been fixed and settled by the conduct of the parties, where the original government corners and lines were, or where the commissioners upon a survey should determine, in their judgment, they ought to be. In this case the court said: "The commissioners are the officers of the court—are appointed by the court, for the purpose of aiding the court in ascertaining and establishing the lines and boundaries alleged to have been in dispute; and, while their recommendation is entitled to consideration, it has not the binding force of a verdict of the jury."

2. SAME: acquiescence: effect.

We have examined the testimony submitted to the court upon which the court found that the line alleged to be in dispute had been recognized and acquiesced in by the parties for more than fifteen years prior to the commencement of the suit, and we find the judgment of the court, based upon that evidence has ample support therein; and, as this proceeding is a special proceeding and not triable *de novo* in this court, it is not necessary to set out the testimony upon which the court acted. In the case *Leathers v. Oberlander*, 139 Iowa, 179, it was said: "In view of the conflict in the evidence, we cannot question the correctness of the . . . judgment of the court based thereon. The case is not triable *de novo*. The finding . . . of the court . . . upon the evidence is as conclusive as the verdict of a jury would be, and we are not justified in reaching a different result." Where there is a conflict in the evidence, and the case is not triable *de novo* in this court, this court will not review the evidence for the purpose of sitting in judgment

3. SAME: appeal: trial *de novo*: review of evidence.

upon the weight of the evidence, or the credibility of the witnesses. The finding of the court upon the facts submitted to it by the commissioners has the force and effect of a verdict of a jury upon the evidence. See *Viltoe v. Richardson*, 58 Iowa, 575; *Herriott v. Potter*, 115 Iowa, 648. In *Doolittle v. Bailey*, 85 Iowa, 398, which so far as the procedure is concerned is much like the case at bar, the court, construing the case of *Yocum v. Haskins, supra*, said that in the *Haskins* case the order of the court, when properly construed in connection with the objections made by the defendant, had the effect only of setting aside the conclusion reached by the commissioners, and not the evidence returned in the report of the commissioners; that, on the report made by the commissioners, the court had the power and right to reach a different conclusion, and make a different finding from that made by the commissioners, so long as in the report there was testimony upon which to base a different finding and a different conclusion; that the commissioners appointed by the court were simply the advisors of the court to make investigation and report their findings to the court, and the court may therefore set aside and reject the conclusions of the commissioners, and upon the report make a different finding and reach a different conclusion, when it is satisfied, under the whole showing, the conclusion reached by the commissioners on the report is wrong.

When an action of this kind is commenced, and it is alleged that the original government corners and lines are lost or in dispute, and commissioners are appointed by the court to locate and determine and establish lines and corners, the first duty of the commissioners appointed is to ascertain, if possible, the government corners, and, if these cannot be found, then to proceed under the rules and by survey to ascertain where those corners were originally placed, and to mark the corners as the original government corners, at the place where they find the original

4. SAME: establishment of corners and lines: duty of commissioners: acquiescence.

government corners were, and, when these are ascertained, the evidence upon which they ascertained it is submitted to the court, and the court then fixes and establishes the government corners and lines where the commissioners have so located them, and the presumption is that they are located at the place where the original government corners were.

The boundaries of land originally were fixed by the government survey. People are presumed to have bought according to the government survey, and they have a right to the lines and boundaries as fixed by the government, if they so insist, but where the parties have fixed their lines and boundaries, and have acquiesced in them for the statutory period, they become the lines and boundaries of their land without regard to where the lines and boundaries were originally placed by the government. Where it is alleged that the government lines and boundaries are lost and commissioners are appointed to make an investigation, and report to the court touching the controversy, and they do investigate and report, and the court finds from the report that lines and boundaries claimed to be in dispute have been established by the parties and acquiesced in for the statutory period, the parties are bound by such boundaries and lines so acquiesced in, and the court will not proceed to the idle investigation of determining where the original government lines and corners were, for the reason that no such determination will affect any substantial right of the parties before it.

If commissioners are appointed by the court, and upon investigation find the true original government corners in existence, they should stop then and report the matter to the court, and, if this was found to be true, the court proceeds no further with its investigation, but leaves the corners as established by the government. If the government corners cannot be found, then they proceed by survey from known and recognized governmental monuments or otherwise to determine where the government corner was, in fact, placed, and, when that is ascertained, it is located at the point pre-

sumably where the government located it, but when the plea of acquiescence is injected into the case, and the court finds that the lines and corners have been settled by the parties and acquiesced in, as required by the statute, no further investigation will be made by the court as to the original government corners, for the reason hereinbefore stated, and it is not necessary that the court should find, in order to support this conclusion of acquiescence, that there was an expressed agreement between the parties touching the lines and boundaries, but from long acquiescence in the line as the true line such agreement may be inferred, and is then binding upon the parties as to the true line. See *Rowell v. Weinemann,* 119 Iowa, 256; *Miller v. Mills County,* 111 Iowa, 654; *Lawrence v. Washburn,* 119 Iowa, 109; *O'Callaghan v. Whisenand,* 119 Iowa, 566.

We find no error in the acts of the court in the taxing of costs. The matter is largely in the discretion of the court, and we find no abuse of discretion in this case.

5. SAME: taxation of costs. See section 4238 of the Code of 1897; *Russ v. Townsend,* 150 Iowa, 164; *Brett v. Clark,* 136 Iowa, 544.

We find no reversible error in this cause, and the judgment of the lower court is therefore *Affirmed.*