ANNA CAREY MULLAHEY et al., Appellees, v. CHARLES SERRA et al., Appellants.

No. 43041.

DECEMBER 17, 1935.

Haemer Wheatcraft and James W. Wilson, for appellants.

H. H. Griffiths, for appellees.

POWERS, J.—Hillside avenue and Hartford avenue are two public streets in the city of Des Moines. They are 264 feet apart. The ground between these two public streets is crossed at an angle by Indianola road. Lot 19, according to the official plat, is 163.5 feet wide and extends through from one street to the other. It is east of Indianola road and separated from Indianola road by lot 20. There are no cross streets for a considerable distance east. John Carey, through whom the plaintiffs appellees claim, acquired the east half of the west half of lot 19, in the year 1885. About the same time, he constructed fences running north and south the full distance between the two public streets as a means of inclosing the ground which he purchased. He then erected a dwelling thereon, and he and his grantees, the plaintiffs herein, have been in continuous possession since that time, occupying up to the lines on which the fences were constructed. The defendants appellants are the owners of the west half of the west half of lot 19, and claim through a contract of purchase from the heirs of Dan Hunter made in 1930. Dan Hunter acquired the property in 1886, and lived there continuously until his death in 1918. Dan Hunter occupied up to this fence and treated the fence as the boundary between these properties during his lifetime. Those claiming through him so occupied until the present controversy arose. For convenience, the property of the plaintiffs appellees will be referred to as the Carey property, and that of defendants appellants as the Hunter property.

Where the line between these two properties as above described would be established by a complete and competent survey does not satisfactorily appear from the evidence. A survey shows that there is a surplusage of ground between Indianola road and the intersection on the east. This surplus amounts to about five feet on the north side of this tract of ground so that if measurements be taken from Indianola road a different point

will be arrived at as the division line than if measurements be taken from the street intersection on the east. It is apparent, also, that if this surplusage were equally divided among the lot-holders, the width of the lots would be more than shown by the recorded plat. No effort was made by either party to arrive at the line by means of measurement from the east or by appor-tionment of the excess. It appears, however, that after the of-ficial plat was made that Indianola road was widened by some 14 feet and that substantially one-half of this was taken from the east side thereof which would be from lot 20. It further ap-pears that the survey which defendant had made was from the east line of Indianola road as widened, and that it is based on the assumption that lot 20 is now as wide as shown by the orig-inal official plat. Under these circumstances, it is impossible to say from the record in this case where the true line as shown by a survey ought to be between lot 19 and lot 20. Much less is it possible from the survey to determine the line between the two tracts involved in this controversy.

It appears, however, that the fence hereinabove referred to as having been erected by Carey in 1885, on the west side of his property, was treated by him and by Hunter as the division line between the two properties up until the time of Hunter's death. A part of that fence was still there when Hunter died, and a section of it was then removed by Carey to accommodate the holding of the Hunter funeral. This would make a period of mutual acquiescence in that fence line as the true line from 1886 to 1918, a period of thirty-two years. Portions of the fence con-tinued to remain on this line thereafter. There is evidence that some of the posts were standing there until after 1930. The stumps of some posts are still there. They appear to have been cut off or rotted off even with the ground, and the portions which remained in the ground are still there. The defendants attempt-ed to show that this fence was a different fence and erected at a different place than the original fence. Such attempted showing is not very convincing.

It seems now well settled as the law in this state that where two adjoining landowners mutually acquiesce in a line marked by a fence for ten years as the division line between their prop-erties, that the line thus recognized becomes the true line between the properties. Our last expression on the subject is found

in Minear v. Keith Furnace Co., 213 Iowa 663, 666, 239 N. W. 584, 585, where it is said:

"It is the settled law of this state that a line between adjoining tracts, definitely marked by a fence which has been acquiesced in and recognized by the owners of the tracts as the division line for more than ten years, becomes, as between the parties, the true line between said tracts, although a subsequent survey may show otherwise, and although neither of the parties intended to claim more than his deed calls for."

Without reviewing the testimony in greater detail, it is sufficient to say the preponderance of the evidence in this case sustains the findings of the trial court that the owners of these two adjoining properties, by mutual acquiescence in a division line, established as the boundary line between them the line occupied by this fence.

But defendants appellants contend that this line was not occupied by a fence when they purchased in 1930. Whether this be true or not is not of controlling importance. The line was so marked as to give ample notice that it was the line to which the adjoining owners occupied. There is evidence that one or more of the posts from the fence were still there. But notice does not depend alone upon that. The Carey property is graded to a different elevation than the Hunter property. The sidewalk in front of the Carey property was separately constructed. A retaining wall made of concrete blocks marked the outer limit of the driveway into the property of the plaintiffs appellees, and indicates the line. Trees, arbors, and a garage on the Carey property also tend to mark the line, as does a garden cultivated on the Hunter property. If the line contended for by the defendants appellants were established, it would obstruct the driveway into the buildings on the Carey property and would clearly violate what the adjoining owners of these properties regarded as the line for a great number of years.

This controversy does not evidence a growing appreciation of the value of real estate in the particular area. It seems to have been generated with considerable heat out of the feeling, real or fancied, that there had been a failure to be a good neighbor. It began with an attempt of the defendants appellants to erect a fence on a line only about two feet from the line which had previously been recognized as the line. The fact that the

fence would be in a driveway on the property of plaintiffs appellees did not at all discourage the enterprise. Indeed, there is much to suggest that embarrassment and inconvenience to the plaintiffs appellees was the motive which prompted its attempted construction. In other words, to disturb improvements on the property of plaintiffs appellees seems to be the main object and purpose of the attempted establishment of a new line. This, in itself, shows that the line thus contended for by defendants appellants cannot be reconciled with the line to which these adjoining owners occupied during all these years, and the line to which the improvements conformed when defendants appellants purchased in 1930.

We are satisfied that the trial court applied to this situation the correct rule of law, and that the preponderance of the evidence sustains the findings of the trial court as to the facts. Its judgment is therefore affirmed.—Affirmed.

KINTZINGER, C. J., and all Associate Justices concur.