F. V. THOMPSON and MOLLIE I. THOMPSON, Appellants, v.
HENRY SCHAPPERT and CLARICE SCHAPPERT, Appellees.

No. 45367.

NOVEMBER 12, 1940.

C. L. Cram and Everette Brown, for appellants.

Harry B. Grund, for appellees.

SAGER, J.—For convenience the parties will be spoken of in
the singular, as the coparties are spouses. Plaintiff purchased
his property 19 years ago. The defendant's property was then
owned by one J. C. Thompson (no relative of plaintiff) who
sold to Mrs. Shannon, now Conlee. When plaintiff purchased,
there was a culvert in front of the drive, half in front of plain-
tiff's and half in front of appellee's property, as the line was
then thought to be. This culvert becoming defective was re-

paired at the joint expense of owners on at least two occasions. At the time the case was tried there was in front of the drive a 16-foot culvert which had been constructed by the city. While Mrs. Shannon owned the property the drive was improved at joint expense. On one occasion plaintiff hauled in cinders and the tenant of Mrs. Shannon spread them to improve the drive. This was used through the years by the owners and their tenants for hauling coal and passage to and from the street. When the lots were graded there was left the drive, lower than the property on either side. This was 12 feet wide with the lots sloping to it from either side. At a date not stated, but shortly before this action was begun, defendant built a fence down the driveway leaving a space of 7½ feet between the fence and plaintiff's house.

Defendant has owned his property since 1934. The driveway was there then and was used by him for hauling coal. No dispute arose between the respective owners until plaintiff's tenant on a recent occasion ordered a guest of defendant out of the drive. Thereupon defendant had a survey made. The engineer was not called as a witness but defendant says that he then discovered that the true line between the properties ran through the driveway 8 feet and 3 inches from his house and 7 feet and 8 inches from the home of the plaintiff. This latter width, plaintiff says, is too narrow to permit backing a coal truck into it. Defendant denies this, but the dispute is not material. There is very little conflict in the evidence. The drive was in its present location when the houses on the two properties were originally built by the common remote grantor of the parties. The drive was, as has been stated, kept up and used by the owners and their tenants continuously until shortly before this case was commenced. So far as the evidence is concerned this might well have been a public alley except that it was not maintained at public expense.

The earliest history of the drive is found in the testimony of J. C. Thompson, one-time owner. Black was then the owner of what is now plaintiff's property. Speaking of his arrangement with Black, Thompson said:

"Q. Was there any agreement in words or writing about the use of the driveway? A. Well, there was none in writing.

We just agreed between us to use the driveway because the ground was narrow there, and we just did.

"Q. Did you two mutually agree to give each other an easement in that driveway? A. What do you mean, an easement?

"Q. Well, give the right for the remainder of the life—for the remainder of your life to let him use the driveway as he sees fit? A. Oh, no. I did not. We didn't agree to that. We didn't expect to stay there all of our lives. * * *

"Q. There was no agreement there, was there; you just used it? Was there an agreement there? A. No. I think we agreed to divide the property. Otherwise we would not have done it.

"Q. Well, what did you say when you agreed to divide the property? A. We just said the lots are narrow here; there is not much room for a driveway; why not just each furnish half the drive and go ahead; in that way we would have more parking—more ground.

"Q. Did you say that to Mr. Black, or Mr. Black say that to you? A. I don't know which one said it in regard to whether it was just them words or not, but then we just mutually had the agreement. That has been twenty years ago, Mister. * * *

"Q. * * * Isn't it true that just what happened is that you and Mr. Black just used the driveway without any sort of an agreement between you? A. No. No, we must have had an agreement; otherwise we would not have done it. He was a stranger when we moved there. We didn't know him. * * *

"Q. Did you talk to him about it? A. Why, certainly I talked to him. How would I know if I hadn't?

"Q. He agreed to let you use the driveway? A. I suppose he must have. We used it.

"Q. You say you suppose you must have. In other words, you just merely used that premises there, the driveway, both of you just used it? A. We just used it. We agreed to divide it that way, use it that way, and we did.

"Q. Did you agree to give him an easement over the right to go over your property? [Answered subject to objection.] A. Well, certainly I would have to have given him the right to use

that half of the driveway, the same as I expected him to let me use his half."

· The trial court held that this record disclosed only a permissive use which was not sufficient to establish an easement by acquiescence. We think this was error. The court apparently failed to take into account the difference between principles applicable to acquiescence and to adverse possession. They are by no means the same though the terms are not infrequently used as if synonymous. 2 C. J. S. Adverse Possession, section 1; Edmunds v. Sughrow, 233 Mich. 400, 206 N. W. 309. While we have not so held in express terms, our cases recognize the distinction. See Patrick v. Cheney, 226 Iowa 853, 285 N. W. 184. The case before us is not bottomed on adverse possession and we are under no necessity of analyzing authorities cited to that question.

The question is: Does the record establish this drive by acquiescence? We hold that it does. We said in Mullahey v. Serra, 220 Iowa 1177, 1179, 264 N. W. 63, 64:

"It seems now well settled as the law in this state that where two adjoining landowners mutually acquiesce in a line marked by a fence for ten years as the division line between their properties, that the line thus recognized becomes the true line between the properties. Our last expression on the subject is found in Minear v. Keith Furnace Co., 213 Iowa 663, 666, 239 N. W. 584, 585, where it is said:

" 'It is the settled law of this state that a line between adjoining tracts, definitely marked by a fence which has been acquiesced in and recognized by the owners of the tracts as the division line for more than ten years, becomes, as between the parties, the true line between said tracts, although a subsequent survey may show otherwise, and although neither of the parties intended to claim more than his deed calls for.' "

It may be said that the cited case and others like it apply to a boundary line and not to a driveway; but we know of no reason why the same principles should not apply. We have so held. Molene v. Tansey, 203 Iowa 992, 213 N. W. 759; Ellsworth v. Martin, 208 Iowa 169, 225 N. W. 417; Brewer v. Claypool, 223 Iowa 1235, 275 N. W. 34. As bearing generally on the

question, see Miller v. Mills County, 111 Iowa 654, 82 N. W. 1038; Note to Johnson v. Whelan, 98 A. L. R. 1096, at 1100; Note to Tripp v. Bagley, 69 A. L. R. 1417, at 1491; Note to Reynolds v. Wall, 113 A. L. R. 417, at 432.

We find it unnecessary to discuss that part of the decree of the lower court which establishes the line between the properties in the present location of the fence, commencing near the south end of plaintiff's garage and extending to the south line of the properties. Defendant knew when he bought the property that the fence was not on the plat line. He accepted pay for the shortage and he cannot now complain.

We conclude that the trial court was in error in not giving the plaintiff the relief asked for with reference to the removal of the fence from the driveway. As to this the decree is reversed and remanded for a decree in conformity herewith. The decree with reference to the south partition of the boundary as being the fence line presently existing is affirmed.—Affirmed in part; reversed and remanded in part.

MILLER, HALE, BLISS, HAMILTON, and STIGER, JJ., concur.

RICHARDS, C. J., and MITCHELL, J., dissent.