BEN SIECK, Appellee, v. HARRY ANDERSON, Appellant.

No. 45457.

JANUARY 13, 1942.

John J. Hess and Wright & Kistle, for appellant.

Frank E. Northrop and Frank D. Capel, for appellee.

STIGER, J.—Plaintiff is the owner of about 200 acres of real estate which adjoins the 240 acres owned by defendant on the north. County Highway G runs north and south along the east side of said lands. Plaintiff claims the boundary line between the two tracts is the south line of a certain ditch and a line fence. The petition states:

"That at a time more than thirty years prior to the commencement of this action, plaintiff's grantors erected a line fence along the south line of plaintiff's real estate above described, and at about said time, constructed a ditch running east and west, the south bank of said ditch and said line of fence constituting the south line of plaintiff's property above described. That said ditch has been maintained by plaintiff and his grantors ever since said ditch was constructed and for a period of more than thirty years, and the south line of said ditch forms the boundary line between plaintiff's property above described on the north, and defendant's property above described on the south. That plaintiff's grantors erected said fence and constructed said ditch with the intent to make the same the south boundary line of said above described property, and to claim, occupy, and use all of the ground and real estate lying north of said fence and the south line of said ditch as their own, and plaintiff and his said grantors have, in fact, claimed, occupied, used, and cultivated all of said ground lying north of said line so established, continuously, openly, notoriously, and adversely under claim of right for a period of more than thirty years, and that said line, as fixed by said fence and the south bank of said ditch, during all of said time constituted,

and now constitutes the south boundary of the land occupied and claimed by plaintiff and his grantors, and by reason thereof plaintiff and his grantors have acquired title to all the lands and real estate lying north of said line above described.''

The petition also alleged that plaintiff and defendant and their grantors have for a period of more than 30 years recognized said line as the boundary line between their respective tracts of real estate and that defendant and grantors at no time prior to October 30, 1939, ever made any claim that said line was not the true boundary line. The petition further stated:

''That on or about the 30th day of October, 1939, the defendant, without authority or permission from this plaintiff, unlawfully and illegally entered upon plaintiff's property above described and constructed a line of fence running east and west at a point about twenty-one feet north of the south line of plaintiff's property. That said acts of the defendant constitute a trespass upon plaintiff's land, and plaintiff is informed and believes that the defendant makes some claim to the real estate of plaintiff located south of the line of said fence extended.''

The trial court found that the division line for many years and more than 10 years was marked by a line fence commencing at County Highway G on the east and extending in a westerly direction to Mosquito Creek and that the boundary line west of the creek to the west side of the land extended due west in line with the said fence and that said line, by reason of adverse possession and acquiescence is, as claimed by plaintiff, now the true boundary line between the premises.

The decree further states:

''That more than 25 years prior to the commencement of this action there was constructed a ditch along the north side of a portion of said fence commencing with County Highway 'G' and extending westerly therefrom. That the original fence along the south side of said ditch is no longer in existence, but that the south bank of said ditch conforms to said original line of fence and has constituted the south boundary line of plaintiff's property above described for more than ten years prior

to the commencement of this action, and has been acquiesced in by plaintiff and defendant and their grantors; and has been recognized by them as the division line between said properties during all of said period. That the fence now on said premises and extending westerly from approximately the west end of said ditch to Mosquito Creek is substantially the same location as the original fence along said division line, and is and constitutes the division line between said premises, and that said line now marked by said fence has been acquiesced in by plaintiff and defendant and their grantors for more than ten years prior to the commencement of this action, and has been recognized by said parties and their grantors during all of said period * * *.''

The court also found that plaintiff and his grantors had established title to the land to said boundary line by adverse possession and that defendant had wrongfully erected the fence 25 feet north of said true division line.

We are in full accord with the findings and adjudication of the trial court.

Harvey Lewis owned the land now owned by plaintiff from 1900 to 1918 and lived on and farmed the place during the period of his ownership. He testified that the original fence on his south line was directly in line with the east and west fence east of County Highway G which was the division line between the farm land east of plaintiff's and defendant's property. In 1908, he constructed a drainage ditch about 18 inches deep and 2½ feet wide about 2 feet north of his south line fence. The ditch extended west from County Highway G about 100 rods. All during the time Mr. Lewis owned this land he farmed it right down to the ditch. No occupant of the land, now owned by the defendant, claimed the fence was not the true division line and all owners and occupants of the Anderson land farmed only to the fence or ditch. The fence now running west from the ditch to the creek is in the same place that the original fence was, on his south line, when he bought the premises in 1900. He testified the fence, built by defendant Anderson, is 24 feet north of the original division line fence; that this west fence is in the same place as where the fence was

when he lived on the farm. He maintained the original fence all of the time he owned this farm and a portion of this fence is still there to the west.

Plaintiff purchased his farm in 1929. He testified the fence between the two farms was a real good fence in 1913; that it was about 2 feet south of the present ditch; that the fence, running west from the ditch, is in line with the south bank of the ditch; that in 1913 the ditch was about 2 feet north of the division fence; that the fence west of the ditch is in the same place as it was in 1913; that he intended to claim and did claim to this ditch and fence when he acquired the property in 1929; that he at all times claimed the fence and ditch constituted his south line; that during the 26 years he has known this land no person occupying the land of defendant has ever farmed across said line; that the owners and occupants of said land only farmed to the fence or ditch; that defendant never made any claim to any part of the property north of the line until he put his fence in his wheat field in 1939, which fence was 24 feet north of said line; that when defendant built his fence there were about 60 rods of division fence from the creek east to the ditch and in line with the south bank of the ditch. That part of the fence that was formerly along the south bank of the ditch has not been maintained during recent years by the several owners of plaintiff's land.

Owners of land in the neighborhood of the lands in controversy and tenants who had rented the lands now owned by plaintiff and defendant and who were familiar with said lands for many years testified that the occupants of plaintiff's land farmed south to the ditch and fence and the occupants of the defendant's land farmed north to the ditch and fence and that occupants of neither farm would cross this line in their farming operations but would turn at said line. Their testimony covered an uninterrupted period of over 30 years. They testified that the said line was "treated as the division line between the two farms by the respective owners and occupants."

Several witnesses for plaintiff testified that the fence, running west from the west end of the ditch, is in the same place as the original fence.

Archie Campbell, a witness for plaintiff, has been the tenant on defendant's land for the past seven years and has been defendant's tenant for the past two years. He testified that during the seven years he has occupied the farm plaintiff had farmed and occupied the land south to the ditch and fence and that during said seven years he had only farmed north to the ditch and fence and had never crossed the ditch in his farming operations.

"Along that line west of the ditch there is a fence in there extending about 60 rods east from the creek. To my knowledge that fence has been in there ever since I farmed the ground. I didn't know anything about it until the last 7 years. The ditch has been there ever since I have been farming, I don't know how long before."

Another witness for defendant farmed defendant's land during the time Harvey Lewis owned plaintiff's land. He testified that "the fence between me and Harvey Lewis was there and was used as a dividing line. The fence went from the road clear to the creek and that was their dividing line between these two properties."

A landowner, testifying for defendant, farmed the land owned by plaintiff from 1920 to 1924. He testified:

"The fence I described ran from the county road on the east practically to Mosquito Creek. The ditch was about two feet north of the fence. That fence marked the boundary line between the two farms. The fence ran in a direct line east and west. We used this fence for a division line all the time I was there and it was so regarded by us when we farmed that land. The ditch extended along the east 40 acres. The fence extended on clear west to Mosquito Creek. That fence along there looked like practically the same fence all the way through. I judge it ran in a direct line east and west;" etc. Other witnesses who were familiar with these farms for many years testified the present fence is in the same location as the original fence.

The defendant, who purchased his farm in 1937, testified:

"I wouldn't say I thought they farmed across the fence.

It looked like that fence separated the two farms and that it was used for that purpose. You could also see that ditch to the east separated these two farms. * * * I never farmed this place myself. I never made any claim that that fence and that ditch wasn't the dividing line between those farms until last fall. Not until I erected the fence in Mr. Sieck's wheat field. I didn't make any claim to Sieck; I just went into his wheat and dug post holes and set a fence without talking to him. * * * The wheat is about as close to the ditch as he could drill it in.

"I knew as a matter of fact, and know now, Archie Campbell, my tenant wasn't farming north of that line since I bought the farm. And I never occupied north of that low place [ditch] and the line marked by that fence and never had any occasion to make any claim to it until last fall.

"My fence is 22 or 23 feet north of the south edge of the wheat. I could see where they had farmed to but I didn't know that was the line. It showed where the people on my farm had been farming and where Sieck had been farming. I could see that.

"Q. And you acquiesced in that line yourself until last fall, didn't you?

"A. Well, I suppose I did.

"I could see the place that was treated as a line."

The evidence shows without substantial contradiction that the original fence and later the fence and south bank of the ditch were adopted and recognized by the owners of the adjoining lands as the boundary line for over 35 years. The respective owners and occupants made no claim to land beyond this division line. The mutual recognition of and acquiescence in this fence and ditch as the line for more than ten years establishes this line described by plaintiff as the true boundary line.

As stated in Mullahey v. Serra, 220 Iowa 1177, 1180, 264 N. W. 63, 64:

"But defendants appellants contend that this line was not occupied by a fence when they purchased in 1930. Whether this be true or not is not of controlling importance. The line was so marked as to give ample notice that it was the line to

which the adjoining owners occupied. There is evidence that one or more of the posts from the fence were still there.''

The exhibits and other evidence show the ditch and fence constituted a visible and well-defined line marking the south boundary line of plaintiff's land and the north boundary line of defendant's land.

Appellant, after this suit was commenced, employed an engineer to locate the line fixed by government survey. Appellant claims he built his fence on the line established by the engineer which is 24 feet north of the boundary line established by plaintiff. There is serious doubt about the accuracy of this line. The engineer measured from two points. He testified:

"Then I had occasion to survey from the north. In surveying from the north I started from the northwest corner of 17, which would be the northeast corner of 18. I didn't find the corner, but I have every reason to believe that the highway right of way there is correct and on the section line. Then I measured from that point south 640 feet. I came out several feet south of the point that I established when I came up from the south. I believe it was ten feet south. So, measuring from the north I find one point and measuring from the south I find a different point.''

But it is immaterial whether or not the engineer established the government survey line. The issue in this case is whether plaintiff has established a boundary line by acquiescence or adverse possession and we have found for plaintiff on this issue.

As stated in Kotze v. Sullivan, 210 Iowa 600, 604, 231 N. W. 339, 340:

"Commencing with Miller v. Mills County, 111 Iowa 654, this court has continuously held that, where a line marking the boundary between adjoining owners is recognized as such for a period of ten years, and has been acquiesced therein for that period, such line becomes the true boundary, notwithstanding it is not the line fixed by government survey. The cases recognizing and applying this rule are too numerous in this state to require citation.''

In Brown v. Bergman, 204 Iowa 1006, 1011, 216 N. W. 731, 733, the court said:

"But, without prolonging the discussion, the case calls merely for the application of our repeated adjudications that the reciprocal recognition of and acquiescence in a fence as marking the boundary, through occupation and exercise of exclusive dominion thereto by the respective adjoining owners for a period of ten years, raise a conclusive presumption of an agreement upon the line so marked as the boundary." See Dake v. Ward, 168 Iowa 118, 150 N. W. 50; Hughes v. Rhinehart, 190 Iowa 560, 180 N. W. 643.

For cases on the question of acquiescence where tenants were in possession, see Brown v. Bergman, supra; Keller v. Harrison, 139 Iowa 383, 116 N. W. 327.

In Brewer v. Claypool, 223 Iowa 1235, 1238, 275 N. W. 34, 35, we said:

"To establish title by adverse possession the claim of right must be as broad as the possession, that is, it was encumbent on the defendants to prove that they intended to claim to the fence whether the true line or not."

This record proves beyond question that plaintiff and his immediate and remote grantors intended to claim ownership to the fence and south bank of the ditch. For over 35 years they occupied the land south to this line and their occupation and exercise of dominion of the farm down to this line was continuous, open, visible and notorious for all of said time.

Appellant complains there is no evidence that a fence ever existed between the two farms from the west side of Mosquito Creek to the west side of plaintiff's farm. This contention is true. This area affects about one acre of appellant's farm. We approve the finding of the trial court on this question. The court said:

"The line extending west from said Mosquito Creek and in line with said fence to the west line of plaintiff's property has been acquiesced in by plaintiff and defendant and their grantors for more than ten years prior to the commencement of this

action, and has been recognized by said parties and their grantors during all of said period."

On this record appellant cannot be permitted to disturb this boundary line which has been established for many years. The trial court was clearly right in finding that in building the fence he was a trespasser on plaintiff's land.

The court appointed a commissioner to survey and locate the division line established by the decree by metes and bounds. In a supplemental decree, the court approved the report of the commissioner and the boundary fixed therein by metes and bounds and quieted title in plaintiff to the land north of this line against all adverse claims of the appellant.

The said supplemental decree is affirmed. The case is affirmed.—Affirmed.

BLISS, C. J., and SAGER, GARFIELD, MILLER, HALE, OLIVER, and WENNERSTRUM, JJ., concur.