JOSEPH L. CONCANNON, Appellee, v. C. C. BLACKMAN et ux., Appellants.

No. 46130.

NOVEMBER 17, 1942.

Hollingsworth & Hollingsworth, of Keokuk, for appellants.

G. L. Norman, of Keokuk, for appellee.

GARFIELD, J.—Lots 1, 2, and 3, Block 122 in the city of Keokuk face to the north on Exchange Street, which runs east and west. (We disregard the fact that the streets and lots in question are not true to the compass.) Each lot is 50 feet in width east and west by about 140 feet in depth north and south. Since 1920 defendants have owned, and most of the time occupied as their home, the front or north 65 feet of Lots 1 and 2 and the east half of Lot 3, being 125 feet along the south side of Exchange Street. The east side of Lot 1 of defendants' property (65 feet) abuts upon Eighth Street which runs north and south at right angles to Exchange Street.

Since 1908 plaintiff has owned, and since 1909 has occupied for a home, a strip 35 feet in width, north and south, by 125 feet in depth, east and west, adjoining defendants·on the south and facing east on Eighth Street. Plaintiff's house encroaches from 1 to 5 inches on defendants' ground north of the boundary line determined by survey from the established monument at the intersection of Eighth and Exchange Streets. It is plaintiff's claim and the trial court held that a boundary line had been established by acquiescence 3 feet, 3 inches north of what we may call the survey line. The principal contention by defendants upon this appeal is that the evidence is insufficient to support the judgment.

I. Although there is some dispute as to the form of action and the manner of trial, we are satisfied the action was brought under chapter 521, Code, 1939; that the judgment has the effect of a jury verdict; that the case is not triable here de novo, and the judgment must be affirmed if there is substantial evidence to support it. Code section 12307; Santee v. Uhlenhopp, 184 Iowa 1131, 1133, 169 N. W. 321; Morrow v. Hall, 169

Iowa 534, 536, 151 N. W. 482; Schoen v. Harris, 162 Iowa 321, 323, 143 N. W. 1108; Leathers v. Oberlander, 139 Iowa 179, 181, 117 N. W. 30.

II. Appellants contend this action was not properly brought under chapter 521 because the true boundary, according to the description in the deed of each party and the survey from established monuments, is not uncertain or in dispute. We are unable to agree. The issue of a boundary by acquiescence may be raised, tried, and adjudicated in this special action, even though there may be no dispute as to the boundary according to the deeds or the survey. Code section 12298; Kraft v. Tennigkeit, 204 Iowa 15, 18, 214 N. W. 562; McGovern v. Heery, 159 Iowa 507, 514, 141 N. W. 435. See, also, Klay v. Kurvink, Iowa, 134 N. W. 633.

III. It is well settled in this state that where two adjoining owners for ten years mutually acquiesce in a line, definitely marked by a fence or in some other manner as the dividing line between them, such line becomes the true boundary, although a survey may show otherwise and neither party intended to claim more than called for by his deed. Sieck v. Anderson, 231 Iowa 490, 497, 1 N. W. 2d 647, 650, and citations; Thompson v. Schappert, 229 Iowa 360, 363, 294 N. W. 580. Of course, the line must be mutually acquiesced in as the boundary line by both parties, and not merely by one owner. Patrick v. Cheney, 226 Iowa 853, 856, 285 N. W. 184; Benjamin v. O'Rourke, 197 Iowa 1338, 1341, 199 N. W. 488; Dwight v. City of Des Moines, 174 Iowa 178, 183, 156 N. W. 336.

IV. We think there is substantial evidence to support the judgment establishing the boundary line by acquiescence. We will mention some of it. The property now owned by appellee was acquired in 1894 by one Moore. At that time there was a board-and-picket fence on the line which the court fixed. The front part of the fence extending east of the house toward Eighth Street was torn down and never rebuilt but the back fence remained. The lot was graded to the line of the fence. "There was a sort of terrace there and it is still there." The difference in grade at the line was and is plainly discernible. The Moores had the terrace sodded to the line of the fence and always kept it mowed.

On January 6, 1908, Moore sold to appellee. About 1913 or 1914, it was suggested that appellee and Mr. French, appellants' grantor, who then owned appellants' property, replace part of the board fence with one made of wire. These adjoining owners then put up 35 to 40 feet of wire fence on the line of the old fence, some of which was left standing. After this rebuilding there was a fence from a jog in the north side of appellee's house to the rear of his ground. Appellee and French did the work themselves and shared the expense. The inference is warranted that French and appellee recognized the fence line as the boundary. Several witnesses testified that this fence stood there until 1923 or 1924 when it was torn down, three or four years after appellants purchased their property. Appellee kept a garden back of his house and cultivated practically up to the fence. He put his ashes in the rear close to the fence.

About 1913 French and appellee agreed to put in a cement sidewalk along the east of their properties. French built his part of the walk first and extended it to the line of the fence. Then appellee built his part. The dividing line of the sidewalk was plainly apparent. Appellee always shoveled snow off the walk to the line even with the fence.

Two areaways extend out about 18 inches from a cellar window on the north side of appellee's house. Appellee used the strip in controversy for painting his house, washing windows, putting on storm windows and putting in coal. Appellants made no objection to any of these uses until some friction was engendered shortly before this suit was brought.

A significant fact in support of the judgment is that about 1922 appellants caused a summer kitchen to be moved to the south and made into a garage. They located this building about 40 feet west of the sidewalk along Eighth Street, with its south side about 8 inches north of the fence line. Appellants then built a cement drive leading from the garage to Eighth Street. The south side of the drive was placed about 4 inches north of the fence line. Appellee told appellant Blackman at the time he was building the drive that he could locate it a few inches closer to appellee's house if he cared to, but Blackman did not do it.

In 1938 appellants built a new garage near the southwest corner of their property with its south side about 2½ feet south of "the fence line" or within about 9 inches of the survey line. Before building this new garage, Blackman approached appellee and wanted to buy about 3 feet from the line of the old fence south, saying that he intended to build. Appellee said he would think it over but nothing further was done about appellants' buying added ground. While this new garage was being built, partially on the strip here in dispute, appellee sent his son over to object to its location. The son was an attorney. " * * * Blackman refused to listen and said he wasn't over the line, or something like that, and went on with his work."

Mr. Blackman caused a survey to be made in 1930 which revealed the location of the boundary as surveyed with reference to the monument at the intersection of Eighth and Exchange Streets. However, he said nothing to appellee regarding the survey nor, the court could find, did he make any definite assertion of title to the strip in dispute, at least until he built his new garage about two years before this suit was started.

We have not undertaken to summarize all the evidence. There is a sharp dispute on some of these matters. For instance, appellants and some of their witnesses denied the fence was standing when they purchased their property in 1920. This is not controlling since the line was marked by the change in grade, the appearance of the sidewalk and otherwise, to give notice that it was the line between the adjoining properties. Mullahey. v. Serra, 220 Iowa 1177, 1180, 264 N. W. 63, 64; Sieck v. Anderson, 231 Iowa 490, 496, 1 N. W. 2d 647, 650. But since the case is not triable de novo it is not our province to solve disputed fact questions nor pass on the credibility of the witnesses. We may observe that the trial court at the request of both sides "viewed the premises" as an aid to understanding the testimony.

We think there is substantial evidence that both appellants and their predecessors in title, each for the statutory period, acquiesced in the line established by the court, as the dividing line. It is urged that the court did not find that appellants had acquiesced in this line but only that their predecessors did. The findings of fact made by the trial court are no part of the judgment proper. If the judgment is right and is supported by

the evidence, any error in the judge's reasoning or in his findings of fact is not prejudicial. In re Estate of Hale, 231 Iowa 1018, 1024, 2 N. W. 2d 775, 779, and cases cited. Other contentions of appellants on this branch of the case have been carefully considered but need not be discussed.

It is perhaps worth mentioning that the city engineer testified appellants' house is built partly beyond the lot line into Exchange Street—the plat indicates the encroachment is about as far as appellee's house extends over the surveyed boundary between these two neighbors. According to this testimony, which is not directly disputed, appellants had the use of 65 feet on the Eighth Street side of their property. It is apparent also that the disputed strip is of much greater value to appellee than to appellants.

V. The trial court made findings of fact on April 20th, and the judgment was entered on May 1, 1941. After establishing the line contended for by appellee, both the findings and judgment provided "that the defendants shall be allowed to maintain the garage referred to as the new garage on the Southwesterly corner of defendants' property without any interference on the part of the plaintiff so long as the same is used as a garage." The judgment provided that both parties should have 30 days in which to file motion for new trial. This time was later extended to June 16, 1941. On this last date appellants filed motion for new trial and appellee moved to modify the judgment by striking therefrom the provision above quoted, without, so far as the record shows, assigning any reason therefor. On April 13, 1942, after other terms of court had been held in the meantime, the court overruled appellants' motion for new trial, but sustained appellee's motion to modify the judgment and struck therefrom the above reservation favorable to appellants. It is urged that the court had no right to modify the judgment in this manner. The contention must be sustained.

Apparently, the original judgment truly reflects the decision which the court then made. It is not claimed there was any error or mistake in the preparation or recording of the judgment. This is not a case of correcting the entry to show the actual decision. (See Annotation 126 A. L. R. 956.) Apparently the

judgment was modified because the trial judge changed his mind on this issue. It appears that the judgment was duly entered and recorded. We must assume that the record was signed by the judge either at the same term or the next succeeding one, as contemplated by Code sections 10798, 10799, and 10800. Perry v. Kaspar, 113 Iowa 268, 272, 85 N. W. 22; Grimes Sav. Bk. v. Jordan, 224 Iowa 28, 33, 276 N. W. 71.

The court has broad power, after proper notice to interested parties, to change, modify, or amend entries upon its records made at the same term. Code section 10801. Ryan v. Phoenix Ins. Co., 204 Iowa 655, 657, 215 N. W. 749, and cases cited; Miller v. Bryson, 171 Iowa 354, 361, 152 N. W. 568. This power was recognized at common law and inheres in the court aside from the statute. Hallam v. Finch, 197 Iowa 224, 226, 195 N. W. 352; Todhunter v. De Graff, 164 Iowa 567, 575, 146 N. W. 66; 31 Am. Jur. 272, section 727; 34 C. J. 207, section 436.

Except for the power of the court to correct errors and mistakes in order to make the judgment entry conform to the actual decision or "to speak the truth" (see Murnan v. Schuldt, 221 Iowa 242, 265 N. W. 369, and cases cited), the court has no inherent power to change an entry made at a previous term. Code section 10803. 13 Iowa L. Rev. 251, 261; 31 Am. Jur. 272, 273, section 727; 34 C. J. 210, section 437; Delbridge v. Delbridge, 189 Iowa 1116, 179 N. W. 438. Such power exists solely by reason of chapter 552, Code, 1939. Workman v. District Court, 222 Iowa 364, 367, 269 N. W. 27; 13 Iowa L. Rev. 257, 446. Here appellee made no attempt to proceed under chapter 552. He neither alleged nor proved any ground entitling him to relief thereunder. The court, therefore, was not authorized to modify the judgment and erred in so doing. See, in addition to authorities heretofore cited, Grimes Sav. Bk. v. Jordan, 224 Iowa 28, 33, 276 N. W. 71; Perry v. Kaspar, 113 Iowa 268, 273, 85 N. W. 22; Fairbairn v. Dana, 68 Iowa 231, 26 N. W. 90. In Perry v. Kaspar, supra, a motion was filed during the same term to set aside the allowance of attorneys' fees improperly made in a judgment. This court held there was no legal authority for sustaining the motion several terms later.

The judgment entered on May 1, 1941, is affirmed. The

order of April 13, 1942, modifying the findings and judgment is reversed. One third the costs of this appeal are taxed to appellee; two thirds to appellants.—Judgment affirmed; order modifying judgment reversed.

All JUSTICES concur.