Hugh Eggers, Appellant, v. James L. Mitchem et al., Appellees.

No. 47283.

(Reported in 34 N. W. 2d 603)

1212

November 16, 1948.

 ▬

G. F. Brooks, of Des Moines, for appellant.

Dickinson & Dickinson, of Des Moines, for appellees.

Wisdom & Wisdom, of Des Moines, for Margaret F. Wilson, cross-defendant.

Holliday & Myers, of Des Moines, for M. J. Dolan and Frances B. Dolan, cross-defendants.

HAYS, J.—This action is brought under chapter 650, Code of 1946, asking for the establishment of a boundary by acquiescence, as provided for in section 650.6, Code of 1946. The court dismissed plaintiff's petition and he appeals.

Appellant and appellee own adjoining farms. The true boundary between the same as established by the government survey is not in dispute, but is known to both parties. Some thirty-odd years ago the land in question was owned by Cornelius Mulane and Hebron Taylor. Appellant takes direct from Taylor, while appellee, through successive grantors, takes from Mulane.

Along the government survey line between the two tracts a creek runs crisscross in such a manner as to, at one point, detach about two acres from the Mulane tract and attach same to the Taylor land. At another point a two-acre tract is detached from the Taylor land and attached to Mulane's. Appellee owns the land from which the two acres are taken and attached to the Taylor land. The Mulane tract, to which is attached the two acres from the Taylor land, is now owned by James E.

Mulane, son of Cornelius Mulane. Appellant's land thus adjoins both the appellee's and the James E. Mulane tracts.

Sometime prior to 1917 Cornelius Mulane and Hebron Taylor, the then owners of the land in question, had a controversy over the division of the fence between their farms. At that time, by agreement between them, the fence was run along the creek bank rather than straight through along the survey line at the location of the two two-acre tracts above mentioned. By so doing, one water gap was eliminated. The fence was erected and has been more or less maintained since that time by the adjoining landowners. Appellant purchased his land in 1938. Appellee acquired his in 1945. In 1947 appellee built his fence on the government line, thus enclosing with his farm the two acres formerly attached to appellant's farm. It is to establish the boundary line along the creek, as formerly, that this action is brought.

Appellant assigns several alleged errors and contends that the case is here triable de novo. The questions presented by the assigned error are (1) that the record does not sustain the court's finding of facts, and (2) that the court was in error as to its interpretation of the law of acquiescence.

I. As to the method of trial in this court: That this appeal is not triable de novo and that the judgment of the trial court has the force and effect of a jury verdict has been definitely established in this state. Section 650.15, Code of 1946; Concannon v. Blackman, 232 Iowa 722, 6 N. W. 2d 116.

II. There is but little dispute in the record. The true boundary line is, and was, known and visible. The fence claimed as a boundary is not on the true line. It was built some thirty years ago and has been maintained since, with each adjoining landowner using the land up to the fence. The fence was originally built by Cornelius Mulane and Hebron Taylor as the result of an agreement between them. Appellant took title from Taylor, one of the principals to the agreement, in 1938. Appellee took title in 1945, through successive grantors, from Mulane, the other principal. The fence, now erected by appellee, is along the known true line. The sole factual question concerns the terms of the agreement and the intention of the parties in making it.

The trial court found the agreement was made for the convenience of the parties in fencing along the creek and to avoid a water gap, that it was not made by either with the intent of determining the boundary line between them. If there is substantial evidence in the record to bear out this factual determination, we are bound thereby.

James E. Mulane, owner of part of the original Mulane land and who was present when the original agreement was made, testified as follows:

"Q. Well, you may state in substance what that conversation was with regard to affecting this particular two-acre piece of property? A. Mr. Taylor and my father wanted to get away from two water gaps which are in the southeast corner of my place at this time and instead of running the fence straight south as it should be on the line, they ran it down along the creek. That leaves just one water gap where otherwise there would be two water gaps. They made the exchange of approximately the land in question."

The witness also testified:

"The Court: Do you claim title or ownership to those two acres you have? A. No, sir. I don't see how I could, not paying the taxes on it. Q. The exchange then was merely for the maintenance of the fence; as far as you know? A. That's right. To do away with a water gap. Q. Not to change the title from one to another? A. Yes. That's right."

J. A. Schooler was present when the original agreement was made. He was there as a trustee to determine the division of the fence between Mulane and Taylor. As a witness he testified:

"Q. You may state what that conversation was. * * * A. Why, after they settled their fence differences they—Mr. Mulane at that time owned all that land west of where Mr. Mitchem's land is and where that creek came through there—they talked about the fence and Mr. Taylor asked him if he wouldn't trade land so they wouldn't have to fence the creek twice. He said he would like to; he had wanted to for several years, and they agreed then and exchanged land. Mr. Mulane took the land west of the ditch and he took the piece east of the ditch. [The

last sentence was allowed to stand subject to a motion to strike as a conclusion, hearsay and incompetent.] * * * Q. What you mean when you say that Mr. Mulane took one part of the land and Mr. Hebron Taylor the other, did you mean that to be a part of the conversation as you heard it? A. It wasn't altogether part of the conversation. They asked us as trustees there to make that adjustment for them there and change that land. They had already agreed on the fence." (That sentence taken subject to motion to strike as a conclusion.)

Appellant as a witness testified:

"A. After Mr. Mitchem put this fence across the North side of these two acres, I harvested one crop. There was no second crop to harvest. I let down the wire Mr. Mitchem had put up.

"The Court: Just a minute. You claim the right to use this land, is that right? A. That's right. Q. Do you claim the ownership of these two acres? A. I don't claim title to it if that is what you mean. Q. That is what I mean. You merely claim the right to use the two acres? A. Yes, sir."

█ Boundary is defined as "A line or object indicating the limit or furthest extent of a tract of land or territory." 11 C. J. S., Boundaries, section 1. At section 68 thereof it is said, "Inasmuch as the ownership of land is affected so far as the agreed line varies from the true line, the proof of the agreed location should be clear."

█ Under the record there is substantial testimony upon which it might be found, and the trial court did so find, that the question of "boundary, as denoting a change of ownership" was not involved and the agreement merely established the fence as a barrier. By this finding we are bound.

██ III. As a matter of law, was the court in error in holding that under the facts a "boundary by acquiescence" had not been established? We think not.

Section 650.6, Code of 1946, provides:

"Either the plaintiff or defendant may, by proper plea, put in issue the fact that certain alleged boundaries or corners are the true ones, or that such have been recognized and acqui-

esced in by the parties or their grantors for a period of ten consecutive years * * *."

The rule is well established that, in the absence of other controlling circumstances, where two adjoining owners for ten years mutually acquiesce in a line definitely marked by a fence or in some other manner as the boundary between them, such line becomes the true boundary. Miller v. Mills County, 111 Iowa 654, 82 N. W. 1038; Kitchen v. Chantland, 130 Iowa 618, 105 N. W. 367, 8 Ann. Cas. 81; Minear v. Keith Furnace Co., 213 Iowa 663, 239 N. W. 584; Concannon v. Blackman, supra.

In Dwight v. City of Des Moines, 174 Iowa 178, 183, 156 N. W. 336, 338, we said:

"Acquiescence must be by both parties to make it a line by acquiescence. Acquiescence is consent inferred from silence— a tacit encouragement. This involves notice or knowledge of the claim of the other party."

In Benjamin v. O'Rourke, 197 Iowa 1338, 199 N. W. 488, it is held that a claim to a boundary line because of acquiescence in a line indicated by a fence must fail when there is no showing when, by whom, or for what purpose the fence was erected or that it was ever treated as a boundary line. While acquiescence does not presuppose an agreement to a line, but on the other hand an agreement to a boundary is to be inferred from a long acquiescence therein (Keller v. Harrison, 139 Iowa 383, 116 N. W. 327), it follows that when the claimed right by acquiescence is predicated upon an agreement, as in the instant case, such an agreement as to the intention of the parties and the purpose of the fence becomes all-important.

In 11 C. J. S., Boundaries, section 79, page 653, it is said, "mere acquiescence in the existence of a fence as a barrier and not as a boundary is not such recognition and acquiescence as will amount to an agreement as to the boundary or establish it as the true line."

Finding no error, the judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.